## W. M. FOREMAN v. UNION INDEMNITY COMPANY.

Eastern Section. April 28, 1928.

90

Whitaker & Foust, of Chattanooga, for appellant.

S. J. McAllester and Finlay & Campbell, all of Chattanooga, for appellee.

SNODGRASS, J. The bill in this cause was filed to collect on a policy of indemnity. Complainant Foreman, under circumstances involving possible criminal negligence, had inflicted injuries upon certain people, among them one T. G. Ozment, in driving his automobile.

Ozment recovered a judgment against him in the sum of $1160, which he paid, and, holding this policy of indemnity issued to him by the defendant, brought suit against it to recover on the policy.

Answer was filed making the defenses set out in the Chancellor's opinion. Proof was taken and on the hearing the Chancellor, notwithstanding he found the last two contentions against the defendant, found the first one in its favor and dismissing the bill, taxing the complainant and his securities with the costs. Both sides have appealed and assigned errors.

Those assigned by the complainant are:

"The Chancellor erred:

"First: In dismissing complainant's bill for failure to give proper notice, because:

"(a) Under the law proper notice was given;

"(b) The notice given was a reasonable notice of the accident involved in this case;

"(c) It does not appear defendant was deprived of any defense or right for want of earlier notice;

"(d) No injury or prejudice was shown to have resulted to defendant on account of failure to give earlier notice than was given;

"(e) Defendant in appearing and defending the case of T. G. Ozment v. W. M. Foreman in the Circuit Court waived notice and is therefore estopped from defending this action on the ground of insufficient notice.

"Second: The Chancellor erred in dismissing complainant's bill on account of alleged insufficient notice, because there is no condition in the policy making the giving of notice a condition precedent to liability, nor is there any forfeiture clause in the policy providing for forfeiture on failure to give notice according to the terms of the policy, nor is there any general provision in the policy making the failure of the assured to comply with any of the provisions or conditions of the policy a forfeiture of all rights to indemnity."

"Third: "The Chancellor erred in not pronouncing judgment in favor of complainant and against the defendant on the insurance policy involved in this case."

The defendant's assignments are:

"I. The court erred in holding that the complainant's action in employing counsel for the defense of suits brought in the Circuit Court of Hamilton county, Tennessee, by Mr. and Mrs. T. G. Ozment for personal injuries sustained in the accident of February 10, 1924, did not constitute acquiescence in defendant's position that it would not be responsible or liable for any judg-

ment rendered in the Circuit Court in said suits as set forth in defendant's letter of March 15, 1924.''

''II. The court erred in holding that the execution of a certain note by W. M. Foreman and M. N. Whitaker and J. L. Foust securities thereon, the proceeds of which were used in payment of the judgment obtained by T. G. Ozment in the Circuit Court of Hamilton county, Tennessee, in the sum of $1160 was not a violation of condition E of said policy and that complainant had the right to file and maintain this suit.''

We agree with the Chancellor in his finding. His opinion is its own vindication, and is as follows:

''This is a suit upon an automobile indemnity policy whereby the defendant agreed, among other things, to indemnify the complainant as owner of a certain automobile against loss from liability imposed by law upon him for damages on account of bodily injuries accidentally suffered or alleged to have been accidentally suffered by any person or persons, caused by his said automobile. The policy appears as Exhibit 'A' to the bill and is here referred to as if here set out. It was issued 5th July, 1922, and ran for one year from that date, but by a rider was extended for another year from 5th July, 1923. From the foregoing statement of the terms of the policy it will be seen that it did not provide indemnity against liability but only for actual loss from liability. The undertaking of the defendant to indemnify the complainant was, however, expressly made subject to a number of conditions. Of these conditions the only two which require to be noticed in this suit are conditions 'B' and 'C'. Condition 'B' reads as follows:

'' 'CONDITION B. Upon the occurrence of an accident, the assured shall give immediate written notice thereof with the fullest information obtainable at the time to the executive office of the company in New Orleans, Louisiana, or to its duly authorized agent. If a claim is made on account of such accident, the assured shall give like notice thereof with full particulars. The assured shall at all times render to the company all cooperation and assistance in his power.'

''Condition 'E' is as follows:

'' 'CONDITION E. No action shall lie against the company to recover for any loss under or by reason of this policy unless it shall be brought by and in the name of the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after actual trial of the issue or agreement between the parties with the written consent of the company, nor unless such action is brought

within two years after such judgment against the assured has been paid and satisfied. The company does not prejudice by this condition any defenses to such action it may be entitled to make under this policy.'

"On the evening of February 10, 1924, the complainant while operating his said car upon a public street ran down and injured a group of four persons two of whom were Mr. and Mrs. T. G. Ozment. Complainant did not give the defendant notice of this accident until March 1, 1924, a period of twenty days. During this period he was engaged in an effort to conceal his identity as the author of the injuries inflicted upon his victims. When his identity was discovered, the injured parties sued him for damages in the Circuit Court of the county. What was the result of the other suits does not appear and is not material, but Ozment recovered a judgment against him for $1100 and his wife a judgment for $15,000, these two suits having been tried together. These judgments were affirmed upon appeal and are conclusive. In this litigation Ozment and his wife were represented by the firm of Whitaker and Foust. After the affirmance of the judgments, complainant claims that he actually paid the judgment against him for $1160 including interest in the case of T. G. Ozment and he did pay it in the manner hereinafter described. Thereupon he brought this suit.

"The defendant by its answer advances three grounds of defense, as follows:

" '1. The complainant failed to give immediate written notice to the company with all information obtainable as provided by Condition B of the policy.

" '2. The complainant acquiesced in defendant's position, without protest, that it would assist in the defense of any suit or suits brought against it, but would not be responsible or liable for any judgment rendered against him.

" '3. That the complainant is not entitled to maintain this suit for the reason that he has not actually sustained any loss or paid any money in satisfaction of a judgment as provided by Condition E of said policy.'

"I shall treat these defenses in the inverse order in which they are stated. The foregoing is merely an outline of the undisputed facts in the case. A consideration of the defenses will require a more particular statement.

"I.

"One defense, the last one mentioned, is that complainant has not actually paid the judgment against him. The facts in this regard are that the complainant is wholly insolvent. After the

judgment against him in Ozment's case was affirmed, an execution was issued and returned 'nulla bona.' Thereafter M. N. Whitaker and J. L. Foust, composing the law firm who had represented Ozment, became sureties upon complainant's note for $1160 at the Hamilton National Bank, whereon the complainant obtained a loan of $1160. This money was paid over to Ozment. Ozment paid therefrom a fee to Whitaker and Foust for their services in the damage suit and also a sum of about $80 to the Morris Bank on which Whitaker and Foust were sureties. The rest complainant kept and put in his pocket.

"The fact that Whitaker & Foust were the lawyers for Ozment and then turned up as endorsers for complainant would upon its face suggest to one not acquainted with their high character, that perhaps this alleged payment was merely colorable and not in good faith. But for this single fact, there is nothing in the record to substantiate the claim of the defendant. Solicitors for defendant concede, and rightly concede, that if anybody else had become sureties for complainant, the satisfaction of the judgment would have been effectual. But Whitaker & Foust had the right as well as anybody else to become complainant's sureties provided only they did so in good faith. They both testify that they did so in good faith, that the money obtained upon complainant's note with their endorsement was turned over to Ozment absolutely and that there is no agreement or understanding by which any part of it is to come back to them from Ozment. There is nothing in the record to contract their testimony upon this subject, and this court has no hesitation in accepting their statement as absolutely true.

"This ground of defense is not sustained.

"II.

"Another ground of defense is based upon the fact that when Ozment brought this suit, the defendant wrote complainant a letter in which it denied liability to him upon the policy upon the ground that he had not given immediate notice and had not cooperated with defendant in the defense. In accordance with the suggestion in this letter, complainant employed a lawyer who was associated with defendant's lawyer in the unsuccessful defense of Ozment's suit. Defendant's claim is that thereby complainant acquiesced in its construction of the policy and tacitly admitted complainant's non-liability.

"This insistence cannot be entertained. The letter referred to was good as a reservation of defendant's right to deny liability notwithstanding its participation in the defense of Ozment's suit, but it cannot be set up as an admission by complainant of non-liability.

## "III.

"The other ground of defense is the failure of complainant to give immediate notice of the accident. This defense is in my opinion well made out. To show this requires a more detailed statement than has heretofore been given of the circumstances of the accident and of complainant's conduct after the accident.

"On the evening of February 10, 1924 complainant left his home on Bell Avenue in North Chattanooga in his car with the intention of going into Chattanooga. His route lay over Bell Avenue going east, thence to the Chattanooga bridge and over the same into the city. Shortly after he left his home he overtook an acquaintance by the name of Miller Spurlock in company with two women of questionable character. They all got into the automobile with him, Spurlock taking the seat beside him in front and the two women taking the seat in the rear. Shortly thereafter, while still on Bell Avenue, complainant's car overtook a group of four persons on the street going in the same direction and ran them down, injuring all four of them. It was late enough in the evening for complainant not to be able to distinguish the members of the group, and this fact might have served to excuse or mitigate complainant's act, but with this I have nothing to do. That matter was settled by the judgment in the court of law. The point of importance here is that whether excusable or not or mitigable or not complainant could not have failed to know from the impact of his car upon his victims and their cries that he had had an accident. Yet he did not stop but went right on until he reached the bridge over the Tennessee River, leading into Chattanooga. There he discharged Spurlock and the women with the injunction that they should not tell anyone about the accident and with the statement that he would go back and see what damage was done. This is testified to by the two women. (Spurlock is dead.) It is said that because the women are of questionable character their story is not to be believed, but what they say is in consonance with all the other acts of complainant, and I think it is true. Complainant drove his car back to the scene of the accident, but a crowd was gathered there and he passed on to his home without making any inquiries or disclosing his identity. The accident and the mystery as to who was the cause of it attracted considerable public notice and was the subject of comment in the daily newspapers of the city. In the meantime complainant kept quiet and said nothing and gave no notice to the defendant. The sheriff of the county and his deputies engaged in an effort to solve the mystery but they were not successful until they happened to arrest Spurlock upon the

wholly unrelated charge of public drunkenness. On questioning him, he let out the names of the two women that were with him and got into complainant's car on this occasion. They and Spurlock disclosed that complainant was the operator of the car. A warrant was sworn out for complainant and he was arrested. When first put under arrest complainant denied any knowledge of the accident, but when told of the arrest of Spurlock and the women, and their statements, he confessed. His excuse for concealing his participation in the affair was that he did not want his wife to know about the women.

"The policy contains no provision for forfeiture for failure to give immediate notice, but the giving of such notice is, under the terms of the policy, a valid condition precedent to the right of recovery. Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn., 438.

"What is immediate notice depends upon circumstances. Literal immediate notice has been excused in some cases upon excusable grounds, but no case cited by complainant, and I daresay none can be found that warrants the withholding of notice for twenty days upon any ground appearing in this record.

"The case above cited also holds that it is not necessary for the insurer to show actual injury as the result of the failure to give immediate notice. But in this case the failure to give notice was a part of complainant's scheme to conceal his part in the accident, and the record in the action at law shows that this attempted concealment may have operated and most probably did operate to enhance the amount of Ozment's recovery, if it did not help toward determining the question of liability.

"For the failure to give immediate notice complainant's bill must be dismissed."

There is a wealth of authority cited in the briefs, but with reference to the contention of complainant we think the provisions of the policy and the authority cited by the Chancellor, that of Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn., 438, coupled with the time and circumstances of the notice as found by him, settles the lawsuit against complainant, and that his assignments of error should be overruled.

Where as in this case liability attaches only upon conditions performed, there is no necessity for attaching any forfeiture clause, which, in such event, would in terms be somewhat of a misnomer. A man does not forfeit that to which he has no right. He may only lose the chance to mature such right.

In the case of Phoenix Cotton Oil Co. v. Royal Indemnity Co., supra, it was held that:

"Under policy indemnifying an employer against actions by employes for injuries requiring as condition precedent to liability of the insurer that immediate notice be given of the injury, the employer could not recover in the absence of such notice, notwithstanding no technical forfeiture is provided for in the policy."

This case discussed that of Blackman v. Casualty Co., 117 Tenn., 478, 103 S. W., 784, and said:

"It is true that in the policy under examination in Blackman v. Casualty Co., supra, there was an express provision for forfeiture on failure to comply with the conditions precedent, and this was commented on and made a point in the decision; but it is not essential that there should be any provision for forfeiture in order to give effect to a condition precedent. This is apparent from the Massachusetts case and other cases cited, and from the very nature of a condition precedent. As said in Hatch v. United States Casualty Co., supra, it is to be premised that the giving of this notice is not a condition subsequent, as it has been sometimes called. It is not simply a part of the rule of procedure for the enforcement of a liability of the defendant, as are the provisions of the 5th paragraph in this same policy providing for proofs of loss. The promise to secure is not absolute, but conditional. The condition is that the notice, whatever it may be, and by whomsoever and whenever given, shall be given. It is a condition precedent to the creation of liability or to the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action."

In another paragraph of the same opinion the court said:

"Nor is complainant relieved of the legal effect of the failure to give notice by the allegations of the bill to the fact that the Royal Indemnity Company was not injured by the delay. At most it is a matter about which opinions may differ, as to whether any injury was really caused by the delay under the facts stated; but the inquiry is irrelevant; if indeed giving of notice was a condition precedent to the right of recovery, the failure to give it prevented any liability from attaching."

By reference to the policy, it is seen that the agreement to indemnify the assured was "subject to the following conditions:" Then follows conditions B and E, as set out in the Chancellor's opinion.

It therefore appears that the condition was not subsequent as it might relate to a part of the rule of procedure for the enforcement of liability, but a condition precedent to the creation of liability; or, as stated in the opinion, to the life of the promise, or one of the essentials of the cause of action.

Our statutes have not gone to the extent of nullifying such a condition for any reason, and to hold that because it does not appear that defendant was deprived of any defense or right for want of earlier notice, or that no injury or prejudice was shown to have resulted to defendant on account of failure to give earlier notice than was given is a sufficient excuse for disregarding such a provision regarding immediate notice, would be to write a new contract for the parties, which we are not authorized to do. No legal impediment barring the right, a man may contract a liability upon such terms as the other fellow evinces a willingness to agree to, and he can have no just cause of complaint if a liability can only be decreed upon the contracted terms. It is of course conceivable that there may be conditions when information of a definite character at the earliest practical moment may be of great advantage, and therefore, unless prohibited, may form a sufficient consideration to be made a condition of liability, even though it may turn out only to serve as a technical defense against liability. However, such a defense may be waived; but it was not waived in this instance, because, as found by the Chancellor, it was sufficiently reserved by the defendant on ascertaining that there had been an accident and a failure on the part of the complainant to give immediate notice in writing.

It is insisted also, that appearing and defending the cases in the Circuit Court estops the defendant from claiming insufficiency of notice. We think not. Such appearance and assistance, which presumably resulted in a benefit to the complainant, could not be used as an estoppel; it could only result as a waiver, if it was so intended. If conditions were such as that the appearance and defense sufficiently evidenced a waiver, the court ordinarily would seize upon it, if justified; but when such appearance is accompanied by a distinct reservation and notice that it is not to be so recognized, liability cannot be visited in the nature of a penalty for such appearance.

Complainant insists that under the law reasonable and proper notice was given. This is a question of fact, and if it be true, then complainant would be entitled to recover. Of course immediate written notice means reasonable, under the circumstances. There must be time to prepare the notice, to mail or deliver it, and of course conditions surrounding the situation cannot be ignored in determining what may be a reasonable time. Circumstances can be imagined which would serve to make even a longer period than was employed in this instance seem reasonable. The law properly would not take into account, but would rather excuse circumstances of delay due to blameless misfortune, or not attributable to any negligence, but we think under the conditions shown in this case that nineteen or twenty days can hardly be regarded as immediate, with no other excuse than that offered. We know it is insisted that complainant did not know

until after his arrest that he had had an accident, but this claim is so wholly improbable that, notwithstanding the insistence that the women who testified to the contrary were of questionable character, other proof aside from their testimony makes the proof so strongly to countervail that there can be no doubt as to its greater weight being against such a contention.

Neither do we think that any fear of the consequences of discovery should avail to excuse the delay. The defendant cannot be chargeable with the results of any gamble of the complainant wherein he voluntarily placed his chance to mature a right of recovery against the consequences of discovery. If humiliation alone was what was to be apprehended, we think he might safely have trusted the insurance company not to make a disclosure, that eventually might involve it in a liability. Concealment because of a possible criminal charge would hardly be considered a sufficient excuse to deprive the insurance company of a lawful contractual advantage.

There is no merit in the assignments of the defendant. The Chancellor's conclusion in relation thereto and the fact of the bona fides of the payment to Ozment, so settled, left no room for controversy on any other point, and should have left none as to the fact, so far as the second assignment is concerned. There is absolutely no evidence that any violation of Condition E was had. The evidence is that complainant borrowed the money from the bank, upon the security of the lawyers who were attorneys for Ozment in the original cause, in which they earned a fee of $500 that they had never received; that the money was obtained by complainant and paid to Ozment, who at the same time paid the attorneys out of it the $500 he owed them, together with $80 which they had paid or secured for him in another matter; that Ozment kept the remainder and used it as he saw fit; that, although the securities paid off the note shortly thereafter, there was or had been no ulterior understanding of any sort in relation to the entire matter; that the transaction was just what it expressed upon its face. If this be true, and there is no evidence to the contrary, it only remains that the attorneys took the risk of a somewhat extensive engagement for one with such limited ability as the complainant apparently has to protect his paper. Their loss, if any they have, will sufficiently pay their folly's tax, but will not evidence any very extraordinary experience. Common knowledge will attest that many accommodating risks have been assumed upon even less provocation than is here manifested. It may be freely conceded that the collection of the fee was the moving cause of their aid to complainant, who may not have been able otherwise to qualify for a contest with the insurance company; but it comes with a very bad grace from the insurance company to say that, because he was able to borrow the money, he violated Condition E. For since there can

be no issue upon the fact, the insistence must rest upon some supposed invalidity of interested securities as violative of the condition. But it is not so nominated in the condition. Neither does it violate any statute or well-regulated system of morals. Nor should it be gratuitously assumed that the complainant, though foiled in the present attempt will never pay his note, if that were material. If he is an honest man, and can do so, he will pay it at sometime, for as appears from the evidence it is a legal obligation. The fortunes of this world are so susceptible of change that, though "hope deferred maketh the heart sick," it need not cause it to despair. At any rate the lawyers only may complain of the law if it fails to reward their broken lance on a mistaken front of battle. It may not detract materially from the glory of their enterprise. We can still admire their pluck, if we cannot approve their judgment. Besides, viewed in connection with the facts of this case, the insistence that one cannot have such interested security to take a risk bears upon its face a somewhat sinister aspect. We are caused to wonder what the insurance company thought a man with such poverty of assets available for the assertion of his rights as this one had wanted with insurance of this kind, if upon occasion he could not interest someone in this way to help him to qualify to collect what might be due him under the policy. The insurance company seems to have an adequate conception of its own rights, but a very narrow conception of complainant's. The evident surprise and distrust with which they view the circumstances of complainant being able to place himself in a position to litigate, would have better commended itself in a refusal to sell such a policy to one of such limited capacity to avail himself of any of its possible benefits. If such policies are continued to be issued we should hesitate long before setting a precedent that one must be able of his own means to first pay the judgment, or that he could not appeal to interested aid, nor that the same could not be even volunteered to him. A perfectly legitimate transaction requires no search of motives. A bad motive is neutralized in the righteousness of the deed.

The Chancellor's reasons for overruling the contentions covered by the first assignment continue sufficient to require it being overruled. As to why complainant, making or continuing his own defense after notice that defendant would not be responsible or liable for any judgments rendered in the suits should be regarded as forfeiting any claim against the company, does not appear. In the brief it is insisted that such acquiescence and independent defense should be regarded as a binding construction of a contract. What contract? Defendant made no contract by its notice; it merely fenced against any conclusion that by its help in the defense, which help it evidently thought it expedient at least to render, it was not meant should be evidence of any purpose to waive any of its rights based upon insufficiency of

notice. The former contract or policy had no ambiguity that need or could be affected by any supposed joint or practical interpretation. The company could not impose new conditions modifying its responsibilities, and make their acceptance to depend merely upon the doing of things that the defendant had an independent right to do,. if in a panic the company withdrew its right to control the lawsuit in order to compel the complainant to speak, when its arbitrary and positive notice neither left alternative to complainant, nor indicated that speech was either necessary or would be effectual. We think the Chancellor well concluded that the only effect it had was to forestall the complainant from insisting that the question of notice was waived.

Upon the whole we think the Chancellor was correct in his conclusions. All assignments are overruled and the decree of the Chancellor affirmed. The costs of the cause in this court will be equally divided. The costs below will remain as adjudged by the Chancellor.

Portrum and Thompson, JJ., concur.