J. WESLEY OSBORNE, Complainant-Appellant, v.
HARTFORD ACCIDENT & INDEMNITY CO.,
Defendant-Appellant, Insurance Company of North
America and Shelby Mutual Insurance Company,
Defendants-Appellees. —476 S.W.2d 256.

Middle Section. July 30, 1971.

Certiorari Denied by Supreme Court January 3, 1972.

520

Hooker, Keeble, Dodson & Harris, Nashville, for complainant-appellant.

Watkins McGugin, Stewart, Finch and McNeilly, Nashville, for Shelby Mutual Ins. Co.

Harold Howser and Charles W. Bone, Gallatin, for Hartford Accident & Indemnity Co.

William J. Harbison, Trabue, Minick, Sturdivant & Harbison, Nashville, for Ins. Co. of North America.

TODD, J. The complainant, Dr. J. Wesley Osborne, filed this suit against three liability insurance companies for reimbursement of monies paid out by him as a result of a malpractice suit and judgment against him. The Chancellor found for the complainant and against the defendant, Hartford Accident and Indemnity Company (hereafter called "Hartford"), in the amount of $6,-280.86, and Hartford appealed. Complainant's suits against Insurance Company of North America (hereafter called "I.N.A.") and Shelby Mutual Insurance Company (hereafter called "Shelby") were dismissed, and complainant appealed.

One of the principal issues is which insurance company was obligated to indemnify complainant for the particular events which produced the judgment against complainant.

Prior to February 4, 1954, complainant was insured by Hartford for $5,000.00. From February 4, 1954 to February 4, 1958, complainant was insured by I.N.A. for $20,000.00. From February 4, 1958 to February 4, 1962, complainant was insured by Shelby for $50,000.00 or $100,000.00 (in various years).

Complainant had a patient named Mrs. Effie Frazor. In 1951, Mrs. Frazor suffered a fractured hip. Complainant arranged for Dr. Don Eyler, an orthopedic surgeon, to perform the necessary surgery. Between December, 1951 and December 1952, three separate surgical operations were performed upon Mrs. Frazor's hip by Dr. Don Eyler at Madison Hospital. Complainant was present and assisted in the first two operations.

One issue on appeal is whether the record in this cause shows that complainant was present at the third operation on December 16, 1952, at which time a surgical sponge was left inside Mrs. Frazor's hip. Another issue on appeal is whether this record shows that complainant saw Mrs. Frazor at any time from the third operation (December 16, 1952) until the expiration of Hartford's policy on February 3, 1954.

The incision from the third operation failed to heal. At various times (unstated in this record) complainant did see Mrs. Frazor in respect to the wound. In May, 1961, another physician (an associate of complainant) discovered the sponge in the incision, it was removed, and the wound healed promptly.

On March 19, 1962, a suit was filed by Mrs. Frazor against Don L. Eyler, M.D., J. Wesley Osborne, M.D., and Rural Educational Association, Inc. (Madison Hospital). The summons, which was served on complainant on March 27, 1962, required defendants to answer:

". . . Mrs. Effie Frazier (sic) in an action for damage in the amount of $150,000,00."

Prior to service of summons, complainant had no notice that a claim would be made against him by Mrs. Frazor. Upon service of summons, complainant contacted his insurance agent, Mr. Bill Cole. The testimony of complainant on this subject is as follows:

"Q. At the time that sponge was . . . or at the time that operation was performed who was your insurance carrier for malpractice coverage?

A. Hartford Insurance Company.

Q. Now, then, who did your notify with Hartford?

A. I contacted Bill Cole, who was the agent for Hartford Insurance Company at that time, to ascertain which company covered me at the time of the alleged negligence, and by his records he informed me that it was Hartford Insurance Company.

Q. And was that the agent, then, that you notified?

A. That's right."

There is no evidence that Mr. Cole was agent for I.N.A. or Shelby, and complainant did not at this time give any notice of the suit to I.N.A. or Shelby by other means.

The liability policy of Hartford was never found, and there was difficulty in finding any record of its issuance. Complainant signed a "non-waiver agreement" under which Hartford would proceed to defend the suit reserving its right to deny liability. It is now admitted by Hartford that the $5,000.00 liability coverage was in force until February 4, 1954.

Shortly after the conversation with Bill Cole, complainant was contacted by The Honorable W. T. Goodall, Jr., who had been retained by Hartford to defend Mrs. Frazor's suit. Complainant was advised of his right to retain private counsel in his own behalf, but he declined to do so.

Before a declaration was filed, a nonsuit was entered in respect to Dr. Don Eyler; Mrs. Frazor died; and the

suit was revived in the names of her heirs against Dr. Osborne and the hospital.

On April 16, 1963, a declaration was filed which alleged:

a. That Dr. Osborne participated in the third operation and was negligent therein.

b. That the incision failed to heal for nearly ten years, until May, 1951, when the sponge was removed.

c. *"Throughout Mrs. Frazor's long period of bedridden disability, the defendant Dr. J. W. Osborne periodically examined and advised her as her personal physician.* Despite Mrs. Frazor's complaints of severe pain, and despite the persistent failure of the incision to heal properly, Dr. Osborne made no attempt to probe the incision or to determine in any other manner whether any foreign substance remained therein. Had he exercised the care and skill prevailing in the medical community of which he was a part, Dr. Osborne would have discovered and removed the sponge, thus sparing Mrs. Frazor the severe pain which she suffered and the disability and expense which she incurred. *Mrs. Frazor was under Dr. Osborne's care from the date of the surgery until the discovery of the sponge in May of 1961. During this period,* he was under a duty to use reasonable care to discover and remove the sponge, and his failure to do so constituted negligence which proximately caused the damages heretofore alleged."

\* \* \* \* \* \*

526

d. "Dr. Osborne entered into a contractual relation with Mrs. Frazor in December of 1952, which *did not terminate until May of 1961.* This contract was *continually and repeatedly* breached by the defenddant *during the ten-year period.* The first such breach occurred during Mrs. Frazor's operation, when Dr. Osborne failed to remove, or to order others to remove the sponge during the time Mrs. Frazor was under his care. *These breaches of contract continued until May of 1961,* and they proximately resulted in the damages heretofore alleged in Count One and incorporated herein by reference." (Emphasis supplied)

Upon trial of the cause, a verdict was directed in favor of both defendants and appeal was taken to this Court. On July 29, 1966, an opinion was filed in this Court affirming the directed verdict for the hospital but reversing the directed verdict for Dr. Osborne. On December 29, 1966, certiorari was denied by the Supreme Court. Said opinion is published as Frazor v. Osborne, 57 Tenn.App. 10, 414 S.W.2d 118, and is exhibited to this record. The principal significance of said opinion is that it pointed out that there were allegations in the declaration and evidence in the record of "continuing negligence" of Dr. Osborne, such that the statute of limitations was not a complete defense as a matter of law. Other parts of the opinion will be mentioned as appropriate.

Upon remand of the cause, complainant was furnished with a copy of the opinion, and same was discussed with him by Mr. Goodall.

On February 20, 1967, plaintiffs filed an amended declaration in which the allegations of negligence of Dr.

Osborne were reiterated in somewhat more specific terms such as:

".. All of these damages were proximately caused by the negligence of Dr. Osborne in failing to remove the sponge from Mrs. Frazor's hip at the time of the operation and by failing to discover the sponge over the years he treated Mrs. Frazor.

\* \* \* \* \* \*

"Mrs. Frazor was under Dr. Osborne's care from the date of the surgery until the discovery of the sponge in May of 1961. During this period, he was under a duty to use reasonable care to discover and remove the sponge, and his failure to do so constituted negligence which proximately caused the damages heretofore alleged.

\* \* \* \* \* \*

"The first such breach occurred during Mrs. Frazor's operation when Dr. Osborne failed to remove, or to order others to remove, the sponge which had been left embedded in Mrs. Frazor's hip. Thereafter, he was guilty of continuing and repeated breaches of contract in failing to use due care to discover and remove the sponge during the time Mrs. Frazor was under his care. These breaches of contract continued until May of 1961, and they proximately resulted in the damages heretofore alleged in Count One and incorporated herein by reference." Tr. pp. 172, 173, 174.

This amended declaration was discussed with Dr. Osborne by Mr. Goodall.

On February 21, 1967, there was a second trial of the case at which time the jury was unable to agree; and a mistrial was entered.

Shortly thereafter, Mr. Goodall asked the adjuster for Hartford when the Hartford policy ended and was informed that it expired on February 4, 1954. This was the first information Mr. Goodall had that Hartford was not the insurer for the entire period of Dr. Osborne's alleged "continuing negligence." Mr. Goodall testified:

"Q. . . . Mr. Goodall, I think you may have said something that you didn't mean. I understood you to say that you were never told at anytime about any other insurance?

A. Well, by Dr. Osborne I was never told about any other insurance.

Q. Well, do you know how your company knew that he had other insurance?

A. I do not know that. I sure do not know.

Q. Well, of course, you knew that your adjuster, Mr. Galloway, was in touch with the other insurance companies?

A. Yes, I did. I knew that.

Q. And when they knew about it you don't know?

A. No, I know nothing about that."

Mr. Goodall testified that he never discussed other insurance (I.N.A. and Shelby) with Dr. Osborne, but that

he "understood" that Mr. Galloway, the adjuster, had done so.

On March 7, 1967, complainant notified I.N.A. and Shelby for the first time that the Frazors were claiming and had sued for damages for malpractice. At that time, both I.N.A. and Shelby denied liability for failure to promptly report claims and lawsuits as required by their policies. Neither I.N.A. nor Shelby participated in any way in the litigation between the Frazors and Dr. Osborne. Hartford, through Mr. Goodall, continued the defense of the case.

On May 16, 1967, at the third trial, there was a verdict and judgment against Dr. Osborne in the amount of $9,000.00. After appeal to this Court, an opinion was filed on January 5, 1968, which is reported as Osborne v. Frazor, 58 Tenn.App. 15, 425 S.W.2d 768, 35 A.L.R.3d 338. Certiorari was denied on March 18, 1968. This opinion, which is not exhibited to the record in the present case, affirmed the judgment, which was subsequently paid by Dr. Osborne with interest and costs making a total of $10,612.69. In addition, Dr. Osborne claims additional $136.76 as loan costs incurred in borrowing the money to pay the judgment.

In the present case, the Chancellor decreed that Hartford was obligated to indemnify complainant for the amount of judgment paid up to the amount of its policy ($5,000.00) plus interest and costs paid, making a total of $6,280.86.

Hartford's first assignment of error is as follows:

"The learned Chancellor erred in attaching res judicata significance to the decision of this Honorable Court in the case of Frazor vs. Osborne [57 Tenn.App 10], 414 S.W.2d 118 (Tenn.App. 1966). This was error because Dr. Osborne has relied on said decision and it alone, to establish that the acts of malpractice and negligence for which he was found liable occurred during the period of policy coverage by Hartford and said decision is completely void of any such finding."

This assignment presents squarely the issue, heretofore mentioned, of whether this record contains any evidence that any event occurred during the period of Hartford's coverage (prior to February 4, 1954) that would subject Hartford to liability.

■ In the present record, the testimony of Dr. Osborne is uncontradicted that he did not participate in the third surgery wherein the sponge was left in Mrs. Frazor's hip. It must be remembered that Dr. Osborne's testimony to this effect was against his interests in his present case against Hartford. That is to say, if Dr. Osborne participated in the surgery on December 16, 1952, then his negligence at that time was covered by the Hartford policy. His testimony under oath that he did not so participate is conclusive of his rights against Hartford in respect to the date and activity in question. Wagner v. Niven, 46 Tenn.App. 581, 332 S.W.2d 511 (1959).

■ The sworn testimony of a party to a case is a conclusive admission, binding upon him in the disposition of the case, unless there is credible evidence of other facts which would negative the effect of the fact admitted by

the party. Harvey v. Wheeler, 57 Tenn.App. 642, 423 S.W.2d 283 (1967). There is no evidence in this record which would explain or offset the legal effect of the admitted fact that Dr. Osborne was not present at the third operation.

There was some insistence at the trial of his case, and some assent by the Chancellor, that the first opinion of this Court of July 26, 1966, exhibited to the record, was a conclusive finding of fact that Dr. Osborne was in fact present at the third operation. This theory is untenable for a number of reasons, viz.:

(a) As stated, Dr. Osborne has conclusively admitted in his testimony in the present case that he was not at the third operation.

(b) The statement of this Court in said opinion that

"and there is some evidence that he also participated in the third." (57 Tenn.App. p. 14, 414 S.W.2d p. 120)

is not a finding of fact, but a recognition of some evidence of a fact.

(c) The conclusion reached by this Court in said opinion was not a final judgment upon the merits, but merely a reversal and remand for a new trial upon the merits.

(d) The facts were not judicially ascertained until the subsequent third trial, verdict, appeal and affirmance.

■ Thus the first assignment of error has merit in that the opinion of this Court in the first appeal of the case of Frazor v. Osborne is not competent evidence that Dr. Osborne participated in the December 16, 1952 operation, and there is no other evidence of such fact in this record.

However, there is evidence of other actions of Dr. Osborne within the period of the Hartford policy; i. e., before February 4, 1954. This evidence is contained in the answer of Hartford filed in this cause on December 24, 1968. On page 3 of said answer is found the following:

". . . Beginning on January 15, 1954, the *Defendant* commenced a series of visits to Mr. Frazor that continued through May 2, 1961, at which time the sponge was found and removed. In each of the visits, examinations and treatments of Mrs. Frazor over the ten year period, and beginning January 1954, it was alleged in the Declaration and found as a matter of fact and law that each treatment, during this period, and examination, was negligently performed by the defendant therein, and each resulted in malpractice on the part of the Complainant herein.

"That from the first visit to the deceased patient, following surgery the last time, for post-operative care, Complainant had a malpractice insurance policy with insurance carriers other than this Defendant, and all obligations of this Defendant had been terminated by the Complainant himself, and this Defendant was not liable for any of the more than fifteen separate acts of negligence and malpractice occuring after the termination and cancellation of its policy on January 1, 1954."

It is obvious that the use of the word "Defendant" in the foregoing quotation is an inadvertence, and that the entire quotation admits that Dr. Osborne actually did visit Mrs. Frazor on January 15, 1954, and was found to be guilty of negligence on that and subsequent occasions.

It is likewise obvious that the draftsman of the quoted answer was under the erroneous impression that Hartford's coverage ended before January 15, 1954, hence had no hesitancy in admitting a negligent act on said date.

As a matter of fact and stipulation in this record, Hartford's policy did not expire until February 3, 1954, and the January 15, 1954 visit therefore occurred during the tenure of the Hartford policy.

■ A pleading filed in a cause by a party, though not under oath, is conclusive evidence against him. Hewgley v. General Motors Acceptance Corp., 39 Tenn.App. 553, 286 S.W.2d 355 (1955).

■ There is, therefore, evidence to sustain the finding of the Chancellor that liability was incurred by complainant during the period of the Hartford policy for which liability Hartford is obligated to indemnify complainant.

On the basis indicated, Hartford's first assignment of error is overruled.

Hartford's second assignment of error is as follows:

"The learned Chancellor erred in failing to consider the complexities surrounding the introduction into our law of the theory of 'continuing negligence', especially by not considering the length of coverage of each insurer with regard to the length of the tort involved."

In support of this assignment, Hartford points out that "continuing negligence" of Dr. Osborne extended over a period of nearly ten years; that, at most, the neg-

ligence for which Hartford should be liable extends from December 16, 1952 (date of third surgery) to February 3, 1954 (expiration of Hartford policy) a period of less than fourteen months; that I.N.A. coverage occupies an entire four year period; and that Shelby coverage extends from February 4, 1958 (issuance of policy) to May, 1961 (date of discovery of sponge), a period of three years, three months. It is insisted that it is inequitable to burden Hartford with such a large proportion of the liability as compared with the small relative time of Hartford's coverage.

It is further pointed out that the failure of Dr. Osborne to notify and pursue his rights against I.N.A. and Shelby have exonerated said insurers and thereby defeated the rights of Hartford to claim contribution from them.

Hartford cites Aetna Life Ins. Co. v. Maxwell (4th Cir. 1937), 89 F.2d 988, for the proposition that the liability insurer should be liable only for the results of the negligent acts which occurred during the term of its policy. In that case, the patient sued to collect from the liability insurer an unsatisfied judgment previously recovered against the insured physician. The *insurer*, which had defended under a "nonwaiver" agreement, sought to prove that at least part of the injuries were sustained *before* the issuance of the policy, and such evidence was excluded. The Federal Court of Appeals held that participation in defense of the primary suit did estop the insurer to deny the validity of the judgment rendered, but did not estop the insuror to allege and show that the damage resulted from acts committed at times outside the term of the policy. The cited case differs from the present case in a number of particulars, viz.:

(a) In the cited case, the insuror offered evidence on the issue of which acts produced the damages; in the present case, no evidence was offered on the subject.

(b) In the cited case, the series of negligent acts began *before* the issuance of the policy; in the present case, the negligent acts began *during* the term of the policy.

(c) In the cited case, there was room for considerable doubt as to the time of the negligence which produced the ultimate amputation of a leg; in the present case, the damages consisted of continued suffering produced by the sponge which was present in the hip on December 16, 1952 and was still present on January 15, 1954 when Dr. Osborne saw Mrs. Frazor.

Until the contrary was proven, the Chancellor was justified in presuming that the failure to find and remove the sponge on January 15, 1954 was a proximate cause of the suffering for which damages were awarded, even though subsequent negligence may have become a concurrent cause.

Hartford also cites Waterman v. Fidelity & Casualty Company of New York, 209 Ill.App. 284 (1917), wherein the patient was already under treatment when the policy was issued. The appellate court affirmed a judgment against the insuror which had refused to defend on grounds that the negligence occurred before the issuance of the policy. The court disapproved a charge that the insuror was liable simply because the patient continued under the care of the physician after the policy issued and held that there could be no liability on the insuror unless the actionable acts occurred during the term of

the policy. The erroneous charge was held to be harmless under the facts, and the judgment was affirmed. The cited case effectively supports the holding of this Court in the present case, wherein there is evidence to support a finding of actionable negligence during the term of the policy.

Hartford also cites Shaw v. United States Fidelity & Guaranty Co. (3rd Cir. 1938), 101 F.2d 92, wherein the patient received 41 treatments prior to the issuance of the policy and 14 treatments after the issuance of the policy. The appellate court simply approved a verdict of the jury in response to a proper charge from the court upon conflicting testimony as to when the damages were sustained. There is no such conflicting testimony in the present case.

■ Hartford's second assignment of error is respectfully overruled.

Hartford's third assignment of error is as follows:

"The learned Chancellor erred in failing to find that Dr. Osborne was guilty of contributory negligence through his own actions, and additionally in failing to find that neither Shelby nor I.N.A. was prejudiced by the delay of notice to them in order that both could be required to share the liability, if any."

■ Hartford points out that complainant knew at all times that Hartford's policy was not sufficient in amount to cover the Frazor claim and that other insurance coverages (I.N.A. and Shelby) were available to share the burden. Such negligence, if any, of Dr. Osborne is not available to defeat or mitigate the obligations of Hartford

under its contract. More sagacious conduct by Dr. Osborne might have preserved his own rights against I.N.A. and Shelby and, incidentally, might have provided some rights of contribution for Hartford. Nevertheless, Hartford had no contractual right to require its insured to act to distribute liability among his insurers, and his failure to do so therefore is not available to Hartford as a defense.

■ Hartford next insists that neither I.N.A. nor Shelby was prejudiced by delay in notice, hence their defense should not have been sustained and they should be held liable for at least some part of the amount assessed against Hartford. This insistence cannot be sustained for the same reason just cited, that is, Hartford has no contractual right to require complainant to look to I.N.A. or Shelby, hence cannot complain that I.N.A. and Shelby were released. If Dr. Osborne for his own reasons, had seen fit to sue only Hartford in the present case, then Hartford could not complain that I.N.A. and Shelby were not sued. By the same token, Hartford cannot complain that no judgment was rendered against I.N.A. or Shelby because neither Dr. Osborne nor Hartford saw fit to see that rights were preserved against I.N.A. and Shelby.

Hartford's third assignment of error is respectfully overruled.

Hartford's fourth assignment of error is as follows:

"The learned Chancellor erred in finding Hartford liable for the limits of its policy because his finding has the effect of extending coverage from a period of

a little more than one year to a period of almost nine years.

Hartford complains that it was not aware of the consequences of the doctrine of "continuing negligence" until March, 1967, at which time it notified I.N.A. and Shelby. From the foregoing chronological recitation of proceedings, it will be observed that the first declaration, filed on April 16, 1963, gave notice of a claim based upon "continuing negligence" and the opinion of this Court, filed on July 29, 1966, affirmed the theory of continuing negligence in respect to the facts of the case. Hartford does not point out how it remained in ignorance of "continuing negligence" until March 1967, and such does not appear from this record. Furthermore, as previously pointed out, the Chancellor was justified in finding that the negligence within the policy period was a proximate cause of all the damages.

Hartford's fourth assignment of error is respectfully overruled.

Hartford's fifth and final assignment will be discussed in the consideration of complainant's second assignment of error.

None of the assignments of Hartford disclose valid grounds for reversing the decree of the Chancellor as to Hartford.

Complainant's first assignment of error is as follows:

"The learned chancellor erred in failing to hold that the plaintiff was excused from notifying I.N.A. and

Shelby of the occurrence prior to March 7, 1967, and that his notice to them on this date was was timely and that, therefore, both Shelby and I.N.A. were liable for the entire judgment against Dr. Osborne, together with costs, interests, damages and attorney's fees.''

Complainant insists, correctly, that he was not obligated to notify I.N.A. or Shelby until an ordinarily or reasonably prudent man would have known (a) of the existence of the policy and (b) of the fact that the policy protected against the occurrence in question. It is also elemental that the duty to notify does not arise until an ordinarily or reasonably prudent man would have known (c) of the occurrence of the event and (d) that the event might reasonably be expected to produce a claim against the insurer.

Inherent in the decree of the Chancellor is a finding of fact adverse to the complainant on each of the foregoing requisites, and there is adequate evidence to support the finding of the Chancellor in this respect.

This record shows unequivocally that complainant chose to change his insurer from Hartford to I.N.A. in February, 1954, and that he paid premiums to I.N.A. for four years. It is also shown without dispute that in February, 1958, complainant changed his insurer from I.N.A. to Shelby; that he paid premiums to Shelby for four years; and that he increased the coverage from $5,000.00 with Hartford, to $20,000.00 with I.N.A., to $50,000.00 and ultimately to $100,000.00 with Shelby. Under these circumstances, and with no satisfactory explanation, it is hardly conceivable that complainant was not aware of the fact that liability policies were in fact outstanding to

protect him from malpractice liability in the amounts and for the periods heretofore detailed. A policyholder may have a momentary or temporary lapse of memory as to his exact insurance coverage, but, when faced with a loss covered by a policy purchased for the specific purpose of avoiding the particular loss (malpractice liability) any reasonably prudent man's memory would be immediately refreshed, at least to the extent of investigating his insurance records.

The acts and omissions of negligence charged to complainant were committed by him. He certainly was not unaware of their occurrence, because he was the principal actor. A review of the second opinion of this Court (Osborne v. Frazor, supra) will disclose that complainant admitted that he should have referred Mrs. Frazor to a specialist *and insisted that he had done so,* however, the jury found otherwise, and he is bound by the verdict. Thus, for purposes of this suit, it must be conclusively presumed that complainant knew he should refer Mrs. Frazor to a specialist *and failed to do so.* Even though he denied this negligent omission, the jury found that he was guilty of same, hence he must be conclusively presumed to have known of his omission, which was grounds for a claim against him.

Finally, the declaration, heretofore quoted, and the first opinion of this Court, both furnished to complainant, were adequate grounds for finding that a reasonably prudent man would have understood that he was faced with a claim arising partly during the effective periods of the I.N.A. and Shelby policies.

The finding of the Chancellor that complainant should have notified I.N.A. and Shelby earlier comes to

this Court for review de novo upon the record accompanied by a presumption of its correctness unless the evidence preponderates otherwise. T.C.A. sec. 27-303. The evidence does not preponderate against the finding of the Chancellor, hence it must be presumed correct.

■ Complainant urges that the doctrine of continuing negligence was announced for the first time in Tennessee in the first opinion of this Court styled Frazor v. Osborne, supra, and that neither counsel nor complainant could or should have anticipated such a ruling. This argument disregards the nature of the doctrine, which is simply a legal reasoning adverse to a plea of statute of limitations in respect to a series of negligent acts. The doctrine relates only to the statute of limitations. It did not and does not otherwise affect the tort liability for negligent acts. In the first declaration, Dr. Osborne was charged with negligent acts which occurred within the policy term of I.N.A. and Shelby. Except for the availability of the plea of statute of limitations, Dr. Osborne's liability for his negligent acts was neither increased nor decreased by the decision of this Court.

■ Accordingly, the application of the doctrine of continuing tort to reject the plea of statute of limitations to the oldest acts of negligence would not affect the duties of the insured to later insurors, especially Shelby, whose policy covered acts which occurred within the statute.

Hartford's third assignment of error, supra, insists that I.N.A. and Shelby should be held liable because they were not prejudiced by the delay of notice to them.

■ A notice requirement in an indemnity policy is a valid condition precedent to the right of recovery. Phoenix Cotton Oil Co. v. Royal Indemnity Company, 140 Tenn. 438, 205 S.W. 128 (1918) and authorities cited therein. In said case, the Supreme Court said:

"Nor is complainant relieved of the legal effect of the failure to give notice by the allegations of the bill to the effect that the Royal Indemnity Company was not injured by the delay. At most, it is a matter about which opinions may differ, as to whether any injury was really caused by the delay under the facts stated; but the inquiry is irrelevant; for if the giving of notice was a condition precedent to the right of recovery, the failure to give it prevented any liability from attaching." 140 Tenn., page 445, 205 S.W., page 130.

See also Foreman v. Union Indemnity Co., 12 Tenn. App. 89 (1928).

The complainant's first assignment of error is respectfully overruled.

Complainant's second and final assignment of error is as follows:

"That the learned chancellor erred in failing to hold that Hartford was negligent in its defense of Dr. Osborne by not advising him to notify his subsequent insurance carriers and not advising him in accordance with their present insistence that since they went off the risk in 1954 any negligent acts committed by him for which Mrs. Frazor sought judgment occurring after that date were not protected by his Hartford

policy, and that for these reasons Hartford should be liable for the entire judgment, interest, costs, damages and attorney's fees.

"That this was error because Hartford as an experienced insurance company knew or should have known that notice to I.N.A. and Shelby was necessary in order to fully protect their insured's rights."

 Complainant concedes that no authority has been found to support this novel insistence, and no such authority has been found by independent investigation. It is true, as urged by complainant that the liability insuror has a duty to exercise ordinary prudence *in defending the action against the insured.* However, this rule has no reference to a duty to search out and preserve rights of exoneration from others, such as other liability insurance companies. The duty of defending means the duty of resisting the suit of the claimant, which duty is defensive in nature. The policy imposes no offensive duties upon the insuror, such as pursuing or perfecting claims against others. See 45 C.J.S. Insurance sec. 933, page 1055 et seq.; 44 Am.Jur.2d, Insurance, sec. 1552, page 434 et seq. As to the meaning of "defend," see Clarke v. Fidelity & Casualty Co. of New York, 55 Misc.2d 327, 285 N.Y.S.2d 503 (1967).

In Oda v. Highway Insurance Co., 44 Ill.App.2d 235, 194 N.E.2d 489 (1963) the court said:

"* * * It is urged that the insurance company should have informed Oda that the Naiditches were contending that sole responsibility for violation of the fire ordinance rested on the tenants (lessees) and that they

were making that contention through lawyers employed by them. It is also argued that the insurance company should have advised the respective parties of their duties under the indemnity and exculpatory clauses of the lease. We cannot assume that the Naiditches and Oda were completely ignorant of the obvious and patent facts of the case. If they were, it was their duty to become informed.

"[4, 5] The duties of general counselorship cannot be imposed upon a public liability insurer to advise each of several insureds not only of the conflicts presented by the limitations of the policy, but also with respect to the rights and duties as between the various insureds themselves. There is no basis in law for the imposition of such a duty. The duty of an insurance company with respect to legal representation is limited to those matters in which it had an interest by reason of its position as an insurer. Utilities Insurance Co. v. Montgomery, 134 Tex. 640, 138 S.W.2d 1062 (1940)." 194 N.E.2d, pages 494, 495.

In summary, from its inception, the history of this controversy has been one of unfortunate, tragic, regrettable errors and oversights. The first victim was Mrs. Frazor, who suffered many years. The second to suffer was Dr. Osborne, who endured three malpractice trials and a monetary loss. The third loser was Hartford, which financed a long and expensive defense and has been required to pay what it considers more than its fair share of the loss. Additionally, Dr. Osborne has suffered the loss of his rights against I.N.A. and Shelby, thereby incurring the loss of his expenditures in excess of the amount recovered from Hartford.

For Mrs. Frazor's suffering, a jury has assessed compensation which has been paid.

The burden of Hartford has been heavier than it would otherwise have been because of certain oversights on its part.

The burden of Dr. Osborne has been heavier than it would otherwise have been because of certain oversights on his part.

In view of the conduct and dealings of all parties concerned, the controversy has been resolved in a manner which comports as nearly as possible with law and justice.

The decree of the Chancellor, dismissing complainant's suit against I.N.A. and Shelby and awarding judgment in favor of complainant and against Hartford for $6,-280.86, is affirmed. The cost of this appeal will be taxed equally against complainant and Hartford, that is, one half of such costs are taxed against complainant and one half against Hartford.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, concur.