**GRIFFITH MOTORS, INC.,
Plaintiff-Appellant,**

**v.**

**COMPASS INSURANCE COMPANY,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 9, 1983.

Application for Permission to Appeal
Denied by Supreme Court
March 12, 1984.

John W. Emerson, Johnson City, for Griffith Motors, Inc.

J. Michael Franks and Thomas E. Schoenheit, Nashville, for Compass Insurance Company.

## OPINION

**GODDARD, Judge.**

Compass Insurance Company appeals a judgment entered upon a jury verdict in favor of Griffith Motors, Inc., in a suit seeking recovery under provisions of a policy issued to Griffith which included, according to the stipulations, "an employee dishonesty commercial blanket coverage or fidelity bond section." Compass raises the following three issues on appeal:

1. Whether there is any material evidence to support the jury's finding that Griffith Motors, Inc., the insured under a fidelity bond, gave notice to Compass Insurance Company as soon as practicable upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss as required by the policy?

2. Whether there is any material evidence to support the jury's finding that Griffith Motors, Inc. filed a proof of loss duly sworn to with Compass Insurance Company within four months after discovery of the loss?

3. Whether there is any material evidence to support the jury's finding that Compass Insurance Company acted in bad faith in refusing to pay the claim of Griffith Motors, Inc.?

Griffith has filed a cross appeal and raises an additional issue:

Whether the lower court erred in granting a partial summary judgment in favor of Defendant/Appellant, declaring that its maximum liability under the policy was $10,000?

Most of the salient facts are covered by the stipulation of the parties, which is as follows:

1. The defendant, Compass Insurance Company, issued a policy of insurance to plaintiff, Griffith Motors, Inc., which included an employee dishonesty commercial blanket coverage or fidelity bond section. Plaintiff paid all premiums due and such policy was in force at all times herein relevant.

2. Griffith Motors, Inc. suffered a loss by reason of employee dishonesty within the meaning of such policy in an amount not less than $30.000.

3. On November 30, 1978, Griffith Motors, Inc. discovered that the employee or employees involved had been engaged in a check kiting scheme resulting in an overdraft at plaintiff's bank in the amount of $329,000. On November 30, 1978, Griffith Motors, Inc. terminated one employee's employment and employed the services of an attorney and certified public accountants.

4. In March of 1979, Griffith Motors, Inc. employed accounting specialists from Detroit, Michigan, to assist in reviewing its losses.

5. In July of 1979, Griffith Motors, Inc. gave verbal notice to Johnson City Insurance Agency, Inc. (defendant's insurance agency), of the possibility of a claim under the employee dishonesty section of the insurance policy issued by Compass Insurance Company.

6. In December of 1979, Griffith Motors, Inc. requested that Compass Insurance Company or its agency provide plaintiff with a proof of loss for making a claim under the employee dishonesty section of the insurance policy.

7. The plaintiff filed a proof of loss form with defendant shortly after receipt of same.

8. The employee dishonesty section of the insurance policy issued by Compass Insurance Company includes the following provision:

> Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the insured shall: (a) give notice thereof as soon as practicable to the company or any of its authorized agents; (b) file detailed proof of loss, duly sworn to, with the company within four months after discovery of the loss.
>
> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage part ...

James N. Allen, sole stockholder of Plaintiff Corporation, was called to the bank where the Corporation had one of its accounts by the bank president on November 30, 1978. At that time Jerry Jones, business manager and comptroller of the motor company, was present. Mr. Allen was advised of the discovery of a check kiting scheme involving some $188,000.[1] On this occasion, after Mr. Jones admitted his participation, his employment was terminated immediately. On the same day Mr. Allen called his attorney and account-

ants to begin an investigation. The bank refused to honor any more company checks and, according to Mr. Allen, the businesses in town received checks that "bounced." Two or three days later he learned, after an audit by representatives of General Motors, that the Company was out of trust (automobiles sold without remitting to the manufacturer the dealers' cost) as to a number of vehicles which had been under a floor plan. Some two months later he learned that he had been losing a two percent discount because of failure of Mr. Jones to make prompt payment of certain invoices.

Mr. Allen's reason for not notifying the agent for the Insurance Company was as follows:

> A. Well, number one, I couldn't believe that I had the loss, so I couldn't believe that Jerry had taken the money; and I owed it to him and to the company and everybody to do a lot of checking before I started accusing a man of—
>
> . . . .
>
> A. At that point in time, we did not know that we had sustained a loss at Griffith Motors.

■ It has long been the law in this State, as set out in *Tennessee Farmers Mutual Insurance Company v. Nee*, 643 S.W.2d 673 (Tenn.App.1982), that "notice provisions of an insurance policy are valid conditions precedent to coverage, and in the absence of notice as required no coverage is afforded even though (1) the policy does not contain a forfeiture claim,[2] and (2) the insurer had not been prejudiced by the delay in notice." Accord: *Phoenix Cotton Oil Co. v. Royal Indemnity Co.*, 140 Tenn. (13 Thomp.) 438, 205 S.W. 128 (1918); *Osborne v. Hartford Accident & Indemnity Co.*, 63 Tenn.App. 518, 476 S.W.2d 256 (1971); *Barfield v. Insurance Co. of North America*, 59 Tenn.App. 631, 443 S.W.2d 482 (1968).

---

1. The stipulation would make it appear that the overdraft was $329,000, but we believe, in fairness, the higher figure was determined at a later date.

2. We assume this word was intended to be "clause."

The phrase "as soon as practicable" has also received attention by the appellate courts. In *Reliance Insurance Company v. Athena Cablevision Corporation,* 560 S.W.2d 617, 618 (Tenn.1977), the Court addressed the question thusly:

A condition in an insurance policy which requires the insured to give notice of an occurrence "as soon as practicable" imposes a duty on the insured to give notice when he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer. *Transamerica Ins. Co. v. Parrott,* 531 S.W.2d 306 (Tenn.App.1975); *Osborne v. Hartford Accident & Indem. Co.,* 63 Tenn.App. 518, 476 S.W.2d 256 (1972); *Munal Clinic v. Applegate,* 38 Tenn.App. 280, 273 S.W.2d 712 (1954).

 Returning to the facts of this case, we would concede for the purpose of argument that a juror might be justified in finding that Mr. Allen did not know or had not discovered a loss at the time of the November 30 conference or shortly thereafter, but we do not believe that reasonable minds could differ that this was an occurrence which might "give rise to a claim for loss." It therefore follows that notice given some nine months thereafter was not "as soon as practicable" as contemplated by the condition in the policy. Nor do we believe that proof of loss filed in December 1979 was within four months of the discovery of loss. It is true the full extent of the loss was not known, and even at the time of trial was still uncertain, but the policy does not require knowledge of the amount of the loss but only knowledge that a loss has occurred.

In light of our disposition of the issues raised by Compass, the issue raised by Griffith Motors is pretermitted.

For the foregoing reasons the Trial Court is reversed and the cause dismissed, except insofar as it relates to costs below, and for that purpose remanded for collection thereof. Costs accruing, both below and on appeal, are adjudged against Griffith.

PARROTT, P.J., and FRANKS, J., concur.