755 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
W.J. THURMAN (MRS.), PLAINTIFF-APPELLANT,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, DEFENDANT-APPELLEE.
 NO. 84-5191
 United States Court of Appeals, Sixth Circuit.
 1/29/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: MARTIN, JONES, and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a diversity breach of contract action in which Mrs. W. J. Thurman sued as the third-party beneficiary of a contract between St. Paul Fire and Marine Insurance Company, the insurer, and attorney V. Lynn Nielsen and the law firm of Van Cleave, Hatfield, McColpin, Werner & Morgan, the insureds. The parties stipulated that no facts were in issue, and on cross-motions for summary judgment the court ruled in favor of St. Paul. We affirm.
 
 
 2
 Thurman brought this action to recover on two default judgments she obtained in the Superior Court for Dade County, Georgia. Both judgments are for the amount of $76,800 and are based on the same cause of action, the legal malpractice of Lynn Nielsen. One judgment is against the estate of Nielsen, who died in an auto accident in December 1979; the other is against Nielsen's surviving law partners. St. Paul is the malpractice liability insurer of both Nielsen and his partners.
 
 
 3
 The legal malpractice arose in the fall of 1976 when Vestal E. Duffey filed suit in Georgia state court asserting ownership of a piece of real estate titled in Thurman's name. Thurman retained Nielsen to represent her in the action, but Nielsen never filed an answer to the complaint. As a result, a default judgment was entered against Thurman on October 26, 1976. In February 1977, Nielsen discussed the default judgment with Duffey's attorney and insisted that he had filed an answer to the complaint. Nielsen indicated that he would file something by the end of the week, but in fact Nielsen never filed anything at all in the Duffey lawsuit. From the date that he was retained by Thurman until his death in December 1979, Nielsen hid the Duffey fiasco from his partners and assured Thurman that her interests were being protected.
 
 
 4
 Upon Nielsen's death in 1979, Thurman retained new counsel who quickly discovered Nielsen's error. On May 5, 1980, Thurman filed a motion in Georgia state court to set aside the default judgment in the Duffey suit. That motion was overruled on June 11, 1980. On July 10, 1980, approximately three years and eight months after the default judgment was entered, Thurman notified St. Paul that she intended to file suit against Nielsen's estate. That was the first notice St. Paull received regarding the events surrounding the Duffey lawsuit.
 
 
 5
 On October 10, 1980, Thurman filed a state court action against Nielsen's estate. Defense of that action was tendered to St. Paul, but St. Paul asserted that the policy did not cover the loss suffered. Thurman obtained a default judgment for $76,800 against Nielsen's estate. On December 11, 1981, Thurman filed a state court action against Nielsen's law partners. St. Paul refused to defend the suit. Thurman and Nielsen's partners entered into an agreement whereby Thurman agreed not to satisfy any judgment from the personal or business assets of the partners unless they were reimbursed by St. Paul. On October 11, 1982, Thurman received a default judgment from the partners. On November 19, 1982, Thurman filed the present action against St. Paul to collect on the judgments against its insureds.
 
 
 6
 St. Paul contends that it is relieved from liability on its malpractice policy with Nielsen and his partners because Nielsen failed to give St. Paul timely notice of the event giving rise to liability. The pertinent part of the contract provides:
 
 
 7
 C. Insured's Duties in the Event of Occurrence, Claim or Suit
 
 
 8
 (1) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.
 
 
 9
 .............................................................
 
 
 10
 ...................
 
 
 11
 * * *
 
 D. Action Against Company
 
 12
 No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the company.
 
 
 13
 (emphasis added).
 
 
 14
 St. Paul claims that it did not receive notice of the 'occurrence' until June, 1980, three years and eight months after the occurrence. Because it did not receive notice 'as soon as practicable,' St. Paul contends that it is not liable on the policy.
 
 
 15
 Thurman contends that she satisfied the notice requirements of the policy by giving notice as soon as she discovered the malpractice. Alternatively, she contends that the partners satisifed the notice requirements by giving notice as soon as they discovered the malpractice.
 
 
 16
 The parties agree that Tennessee law controls this case. Tennessee courts have held that a contract term that requires an insured to give notice 'as soon as practicable' requires the insured:
 
 
 17
 to give notice when he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer. Transamerica Ins. Co. v. Parrott, 531 S.W.2d 306 (Tenn. App. 1975); Osborne v. Hartford Accident & Indem. Co., 63 Tenn. App. 518, 476 S.W.2d 256 (1972); Munal Clinic v. Applegate, 38 Tenn. App. 280, 273 S.W.2d 712 (1954).
 
 
 18
 Reliance Insurance Co. v. Athena Cablevision Corp., 560 S.W.2d 617, 618 (Tenn. 1977).
 
 
 19
 It is undisputed that Nielsen did not give notice within the time required by the contract. The issue therefore becomes whether Nielsen's knowledge of the malpractice and his failure to give timely notice affected the right of the law partnership or Thurman to give notice within a reasonable period after they learned of the malpractice.
 
 
 20
 Section 61-1-111 of the Tennessee Code Annotated provides:
 
 
 21
 Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.
 
 
 22
 (emphasis added). Although Thurman claims that Nielsen's act of concealing the malpractice from his partners was a fraud against the partnership, she has cited no case to that effect. In the absence of a factually similar, controlling Tennessee case, and in the absence of any evidence that Nielsen failed to disclose the malpractice in order to 'obtain an undue advantage' over his partners, Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976), we hesitate to construe the general case law on fraud to bring this case within the fraud exception of section 61-1-111.
 
 
 23
 Additionally, Thurman's claim that she gave the requisite notice is refuted to Franklin v. St. Paul Fire & Marine Insurance Co., 534 S.W.2d 661 (Tenn. Ct. App. 1975). The Franklin court held that the rights of a third-party beneficiary in an insurance contract are 'no greater than those of the insured.' Id. at 665; see also Dillingham v. Tri-State Insurance Co., 214 Tenn. 592, 381 S.W.2d 914, 920 (1964); Horton v. Employers Liability Insurance Corp., 179 Tenn. 220, 164 S.W.2d 1016, 1018 (1942); Goodner v. Occidental Fire & Casualty Co., 59 Tenn. App. 317, 440 S.W.2d 614, 616 (1969). Because both Nielsen and the partnership failed to preserve their rights under the contract, Thurman cannot now invoke its protections.
 
 
 24
 The judgment of the district court is affirmed.