# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

December 12, 1997

Cecil W. Crowson
Appellate Court Clerk

WILLIAM B. DEMONTBREUN,     )
     )
    Plaintiff/Appellant,     )
     )   Sumner General Sessions
VS.     )   No. 2496-G
     )
     )   Appeal No.
KATHY JO MITCHELL DEMONTBREUN,     )   01A01-9703-GS-00129
     )
    Defendant/Appellee.     )

APPEAL FROM THE GENERAL SESSIONS COURT
FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE BARRY BROWN, JUDGE

For the Plaintiff/Appellant:         For the Defendant/Appellee:

Nicholas D. Hare         Wayne Detring
Nashville, Tennessee         Hendersonville, Tennessee

## AFFIRMED IN PART; MODIFIED IN PART
## AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal focuses on the financial aspects of the dissolution of a short-term marriage. After approximately four years of marriage, the husband filed for divorce in the Sumner County General Sessions Court. Less than one week later, the wife filed for divorce in the Chancery Court for Sumner County. The parties agreed to consolidate the cases in the general sessions court, and following a bench trial, the court declared the parties divorced, divided the marital property and debts, awarded the wife $1,500 in alimony, and directed the husband to pay the wife $2,500 for her legal expenses. Both parties take issue with the judgment. The husband asserts that the general sessions court's calculation of his debts to the wife is incorrect. The wife takes issue with the resolution of marital fault, the division of marital property, and the amount of the rehabilitative alimony award. While the calculation of the husband's debt to the wife must be modified, we affirm the remainder of the judgment.

## I.

Kathy Jo Mitchell first met William B. Demontbreun prior to 1991 when she retained him to prepare her federal income taxes. Ms. Mitchell had recently left her employment with a stockbroker and had received distributions of her pension and profit-sharing accounts. Mr. Demontbreun was a self-employed accountant. Ms. Mitchell went to work for Mr. Demontbreun in January 1991, and they were married on May 10, 1991. Ms. Mitchell was then thirty-six years old and had been married once. Mr. Demontbreun was fifty years old and had been married twice.

The marriage was apparently troubled from the beginning. The parties had financial and religious disagreements. Mr. Demontbreun believed that Ms. Mitchell was controlling, sexually distant, and intemperate with money. For her part, Ms. Mitchell believed that Mr. Demontbreun was verbally and physically abusive. She also discovered after the marriage that Mr. Demontbreun was experiencing serious financial problems. As a result, Ms. Mitchell made periodic loans to Mr. Demontbreun from the funds that had been in her retirement and profit sharing

accounts prior to the marriage. Mr. Demontbreun agreed to repay these loans as he obtained funds.

The parties separated in August 1995 following a dispute over one of their automobiles. On November 16, 1995, Mr. Demontbreun filed suit in the Sumner County General Sessions Court seeking a divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Six days later, Ms. Mitchell filed a divorce action in the Chancery Court for Sumner County seeking a divorce on the same grounds. Following a bench trial on July 29, 1996, the general sessions court filed its findings of fact and conclusions of law and final decree on August 19, 1996. The court declared the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) (1996). It also directed Mr. Demontbreun to pay Ms. Mitchell $6,200 for her loans during the marriage, as well as $1,500 for her educational expenses, and $2,500 for her legal expenses. In addition, the court awarded each party their separate property, divided the marital property, and allocated the marital debts. Both parties take issue with the judgment

## II.
### THE AWARD OF THE DIVORCE TO BOTH PARTIES

Ms. Mitchell takes issue with the trial court's decision to declare both parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) rather than to grant her the divorce. She claims in a rather perfunctory way that she proved more serious marital fault than did Mr. Demontbreun and, therefore, that she was entitled to the divorce. We find little merit in this argument.

Appellate courts review decisions awarding a divorce to either or both parties using the familiar Tenn. R. App. P. 13(d) standard. Accordingly, we presume that the trial court's findings are correct, and we will not overturn them unless they are not supported by a preponderance of the evidence or are inconsistent with the applicable divorce statutes. *See Hazard v. Hazard*, 833 S.W.2d 911, 913 (Tenn. Ct. App. 1991). While Ms. Mitchell presented evidence of at least two incidents of physical abuse by Mr. Demontbreun and of their disputes over religious and financial matters, Mr. Demontbreun presented evidence of Ms. Mitchell's controlling conduct, her reluctance to associate with his family, and the couple's sexual dysfunction. The

evidence presented by both parties supports the general sessions court's decision to declare the parties divorced.

### III.
### THE DIVISION OF THE MARITAL ESTATE

Ms. Mitchell also asserts that the general sessions court erred by failing to award her one half of the $14,000 Mr. Demontbreun allegedly had in a lock box at home at the time of the separation. While the court did not mention these funds in its findings of fact, the omission is not necessarily error in light of the conflicting proof concerning these funds.

Mr. Demontbreun testified that the parties customarily kept between two and three thousand dollars in cash in a lock box in their apartment and that Ms. Mitchell frequently took funds from the box for spending money. He stated he removed the money from the box prior to the separation. Contrary to Mr. Demontbreun's testimony concerning the amount of money in the box, Ms. Mitchell testified that there was $14,000 in the lock box when the parties separated. There is no clear proof about what Mr. Demontbreun did with this money or whether any of it was still in his possession at the time of the divorce hearing.

Trial courts have wide discretion when determining how to divide a marital estate in an equitable manner. *See Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). Their discretion is guided by the factors listed in Tenn. Code Ann. § 36-4-121(c) (Supp. 1997) and by other factors made relevant by the facts of the particular case. *See Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988); *Denton v. Denton*, 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995). Reviewing courts give great weight to a trial court's distribution of marital property and will not disturb its decision unless it is contrary to the preponderance of the evidence. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994).

Marital property should be divided in a just and equitable manner. The division need not be mathematically equal to be equitable, *see Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996), and each party need not receive a share of every item

of marital property. *See Brown v. Brown*, 913 S.W.2d at 168. When a marriage has been short, the trial court may distribute the marital property in a way that, as nearly as possible, restores the parties to their pre-divorce economic circumstances. *See Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

The fact that the general sessions court did not mention the money in the parties' lock box supports one of three possible conclusions. First, the court could have determined that the funds had long since been spent. Second, the court could have concluded that it would be equitable to award Mr. Demontbreun these funds. Third, the court could have overlooked the existence of these funds. We do not choose to adopt the third possibility because of the lack of proof corroborating Ms. Mitchell's statement that the lock box contained $14,000. We choose instead to presume that the trial court performed its duty in a responsible manner. In light of the proof of Mr. Demontbreun's economic difficulties, we have concluded that the weight of the circumstantial evidence is that Mr. Demontbreun spent these funds between the separation and the divorce hearing and, thus, that they were not available for distribution as part of the marital estate.

## IV.
### THE AWARD FOR REHABILITATIVE SPOUSAL SUPPORT

Ms. Mitchell contends that she should have received more spousal support. The general sessions court awarded her $1,500 to enable her to become a certified office manager. Ms. Mitchell now insists that the trial court should have also awarded her $138 per month for two years to enable her to pay her medical insurance premiums.

Tennessee's spousal support statute expresses a strong preference for rehabilitative spousal support. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1997). The purpose of this support is to enable the recipient spouse to acquire job skills, education, or training that will enable him or her to be more self-supporting. *See Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989). The needs of the recipient spouse and the obligor spouse's ability to pay are generally the most important considerations when setting spousal support, *see Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App.

1996); *Barnhill v. Barnhill*, 826 S.W.2d 443, 455 (Tenn. Ct. App. 1991); however, rehabilitative support issues focus more on the need of the recipient spouse. *See Wade v. Wade*, 897 S.W.2d at 719.

Trial courts have wide discretion to fashion support awards, and thus appellate courts give great weight to their decisions. *See Wilson v. Moore*, 929 S.W.2d at 375. While the courts may weigh fault into the equation, *see* Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support awards should not be punitive. *See Brown v. Brown*, 913 S.W.2d at 169.

Ms. Mitchell is currently forty-three years old and is in good health. She was economically self-sufficient before the marriage. At the time of the divorce she worked part-time at a department store; however, she is capable of more gainful employment in light of her premarital work history and her plans to rehabilitate herself by improving her job skills. On the other hand, Mr. Demontbreun is now sixty-six years old. He has suffered a number of financial reversals, and it is unlikely that his ability to earn income or to accumulate capital assets will improve during the remaining years that he will be able to work. In light of the parties' personal circumstances, the duration of their marriage, and the division of their marital property, we find that the evidence does not preponderate against the court's denial of Ms. Mitchell's request that Mr. Demontbreun pay her medical insurance premiums for two years.

## V.
### THE UNPAID LOANS

Mr. Demontbreun asserts that the general sessions court erred by ordering him to pay Ms. Mitchell $6,200 representing repayment of the loans she made to him during the marriage. He claims that the trial court should have taken into consideration one payment he made before the marriage, the money Ms. Mitchell received between the separation and the divorce trial, the parties' honeymoon expenses, and a calculation error by Ms. Mitchell. Not surprisingly, the total of Mr. Demontbreun's claimed adjustments more than off-sets the amount of money he owed to Ms. Mitchell when the parties separated. We have determined that the $6,200 award should be modified.

Ms. Mitchell insists at the outset that Mr. Demontbreun should not be permitted to take issue with the general sessions court's calculation of his indebtedness because he testified at trial that she had given him credit for all the payments he had made. While Mr. Demontbreun did make this concession at one point during his cross-examination, he took issue with several aspects of Ms. Mitchell's evidence at other points. Since we are reviewing the evidence in accordance with Tenn. R. App. P. 13(d), Mr. Demontbreun's statements are not conclusive if the record contains credible evidence of other facts contrary to his concessions. *See Osborne v. Hartford Accident & Indemn. Co.*, 63 Tenn. App. 518, 530-31, 476 S.W.2d 256, 261 (1971); *see also Johnson v. Steele*, 541 S.W.2d 795, 799 (Tenn. Ct. App. 1976); *Harvey v. Wheeler*, 57 Tenn. App. 642, 648, 423 S.W.2d 283, 285-86 (1967).

Both parties agreed that Ms. Mitchell routinely loaned Mr. Demontbreun money during the marriage with the expectation that Mr. Demontbreun would repay her when he was able. The parties' record keeping concerning these loans and repayments was extremely haphazard. At trial, Ms. Mitchell's testimony that Mr. Demontbreun still owed her $6,775 was based solely on her bank statements and canceled checks during the marriage. Mr. Demontbreun likewise kept no running tabulation of these loans and contradicted Ms. Mitchell's calculations with his own canceled checks. With the evidence in such a confusing condition, it would be difficult for any finder-of-fact to avoid calculation errors.

Part of the loans claimed by Ms. Mitchell included $2,000 loaned to Mr. Demontbreun in January 1991 to help him pay some legal expenses related to his bankruptcy proceeding. Ms. Mitchell substantiated this loan by producing a $2,000 check dated January 30, 1991 made payable to Mr. Demontbreun. Mr. Demontbreun asserted that he repaid this loan one week later and produced a $2,000 check dated February 5, 1991 made payable to Ms. Mitchell. Ms. Mitchell did not contradict Mr. Demontbreun on this point. Accordingly, we find that Mr. Demontbreun should have received credit for this payment and that the amount of his debt to Ms. Mitchell should be reduced by $2,000.

Mr. Demontbreun also asserts that the general sessions court did not apportion all the parties' wedding and honeymoon expenses and that he should have received

a $1,200.96 credit rather than a $500 credit against his debt to Ms. Mitchell. Although the proof shows that the parties' wedding and honeymoon cost $2,276.96, Ms. Mitchell testified without contradiction that the wedding cost approximately $1,000 and that the remainder of the expenses were for the honeymoon. She also testified that Mr. Demontbreun had agreed to pay for the wedding and honeymoon and, therefore, that the trial court erred by requiring the parties to be jointly responsible for these expenses. Since Mr. Demontbreun does not contradict Ms. Mitchell's assertion that he agreed to pay for the wedding and honeymoon, it appears that Ms. Mitchell loaned him the money for both events and that she was entitled to be repaid for these expenses. Accordingly, he was not entitled to a credit for any of the expenses related to the wedding and honeymoon.

Mr. Demontbreun claims that he should also receive credit for the $5,870.64 Ms. Mitchell received after the parties' separation. As best as this record reveals, these funds were used for car payments, insurance premiums, and other expenses related to Ms. Mitchell's support. Thus, they were in the nature of voluntary pendente lite support rather than loan repayments. Since Mr. Demontbreun was obliged to support Ms. Mitchell prior to the divorce, the general sessions court did not err by refusing to give him credit for the these payments against his debt to Ms. Mitchell.

Mr. Demontbreun's final claimed adjustment stems from a miscalculation of the loans Ms. Mitchell made to Mr. Demontbreun in 1993. Ms. Mitchell asserted that she loaned him $16,271 in 1993; however, the bank statements and checks she produced at trial showed withdrawals and payments amounting to only $15,300. Because Ms. Mitchell could not substantiate the full amount of the 1993 loans, Mr. Demontbreun should have received a $971 deduction from the amount claimed by Ms. Mitchell.

In summary, we have determined that the general sessions court's award reflecting Mr. Demontbreun's indebtedness to Ms. Mitchell must be modified. Mr. Demontbreun is entitled to credit for his $2,000 payment to Ms. Mitchell in February 1991 and to a $971 credit based on Ms. Mitchell's miscalculation of the total of loans made in 1993. However, he is not entitled to a $500 offset for a portion of the wedding expenses. Therefore, based on Ms. Mitchell's testimony that Mr.

Demontbreun owed her $6,775, we have determined that the record supports awarding her $4,304. Accordingly, we reduce the general sessions court's $6,200 award to $4,304.

## VI.

### MS. MITCHELL'S LEGAL EXPENSES ON APPEAL

The general sessions court awarded Ms. Mitchell $2,500 to defray her legal expenses at trial. Now she asserts that Mr. Demontbreun should be required to pay her legal expenses for this appeal. Awards of this sort are treated as additional support, *see Smith v. Smith*, 912 S.W.2d at 161; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988), to be awarded when the spouse seeking them lacks sufficient funds to pay his or her legal expenses or would be required to deplete resources in order to do so. *See Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

There is nothing in the record showing that Ms. Mitchell is unable to pay her legal expenses. She is currently employed and testified that she will be able to increase her earnings once she receives her office management certificate. When Mr. Demontbreun repays his debt to her in full, her assets will be restored to their amount prior to the marriage. We find no economic disparity justifying the imposition of attorney's fees on appeal.

## VII.

We affirm the judgment as modified herein and remand the case to the general sessions court for further proceedings consistent with this opinion. We tax the costs in equal proportions to William B. Demontbreun and his surety and to Kathy Jo Mitchell for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WALTER W. BUSSART, JUDGE