## NORMAN FRAZOR et al., Plaintiffs-in-Error, v. DR. J. W. OSBORNE et al., Defendants-in-Error.— 414 S.W.(2d) 118.

Middle Section. July 29, 1966.

Certiorari Denied by Supreme Court December 5, 1966.

Hooker, Hooker & Willis, Nashville, for plaintiffs in error.

W. T. Goodall, Jr., Gallatin, for defendant-in-error Dr. J. W. Osborne.

Watkins, McGugin & Stewart, Nashville, for defendant in error Rural Education Ass'n Inc., D/B/A Madison Hospital.

I

## THE CASE

SHRIVER, J. This appeal-in-error involves a malpractice action brought against Dr. J. W. Osborne, a private physician, and the Rural Education Association, owner of Madison Sanitarium and Hospital, at Madison, Tennessee.

The action was originally brought on behalf of Mrs. Effie Frazor but she died shortly after the action was filed and her surviving heirs were substituted as plaintiffs.

The declaration is in five counts and alleges that Mrs. Frazor fell and broke her hip in December 1951 and was taken to the office of the defendant, Dr. J. W. Osborne, in Hendersonville, Tennessee, where X-rays were taken and, upon Dr. Osborne's advice, she was then taken to Madison Sanitarium and Hospital for surgery.

The declaration further alleges that as a result of the negligence of both defendants Mrs. Frazor suffered severe injury and disability. The negligence consisted in permitting a surgical sponge to remain embedded in her hip for a period of almost ten years, this sponge having been left in her hip during an operation at the Madison Hospital in 1952, and liability of both defendants is predicated on the theory of continuing negligence.

The declaration alleges that the defendant, Dr. Osborne was guilty of continuing negligence in his treatment of Mrs. Frazor during the ten year period following her operation, which negligence consisted of his failure to probe the incision to determine whether a foreign substance was present after it became obvious that the incision was not healing properly.

It is alleged that the corporate defendant was guilty of continuing negligence in that it failed to provide sponges for use in Mrs. Frazor's operation which contained radio opaque threads that are readily identified under an X-ray, and that such sponges were in general use by all reputable hospitals at the time of her operation. It is further alleged that X-rays were taken of Mrs. Frazor's hip in February, 1954, which would have revealed the embedded sponge if it had contained the radio opaque threads.

Both of the defendants filed demurrers alleging that the declaration showed on its face that the actions were barred by the Statute of Limitations. This defense was met by the allegation that defendants were guilty of continuing negligence which did not terminate until May, 1961, when the sponge was discovered and removed, and that the action was filed less than one year after that date.

Judge Puryear, on the Trial Court at that time, overruled both demurrers and, thereafter, the defendants filed pleas of not guilty and the Statute of Limitations and the case went to trial on November 1, 1965. At the conclusion of plaintiffs' proof the Trial Judge, Honorable Thomas Boyers, III, sustained the motions of both defendants for a directed verdict on the ground that the action in each instance was barred by the Statute of Limitations of one year.

From this action, after the motion for a new trial was overruled, the cause was appealed-in-error to this Court and assignments filed.

## II

## ASSIGNMENTS OF ERROR

There are three assignments of error which, in the aggregate, challenge the action of the Trial Judge in directing the verdicts against plaintiff in favor of both defendants based on the Statute of Limitations.

It is the theory of plaintiffs, as hereinabove indicated, that the defendants were guilty of a continuing course of negligent conduct so that the Statute of Limitations did not begin to run until the negligence ceased and that suit was brought within one year after the sponge was

discovered, and within one year after Dr. Osborne ceased to be the physician responsible for and in charge of the treatment of Mrs. Frazor.

## III

## THE FACTS

There is proof in the record to support a finding of the following facts:

In 1951 and 1952, Mrs. Frazor, underwent three operations in Madison Hospital as a result of a hip fracture in December, 1951. She was admitted to the hospital by the defendant, Dr. J. W. Osborne, and he participated in the first two operations and there is some evidence that he also participated in the third. After the third operation in December, 1952, Mrs. Frazor returned to her home where she remained disabled and bedridden until her death in 1962. From December, 1952 until May 1961, she was under the continuing care of Dr. J. W. Osborne, who made numerous house calls during this period to observe and treat her and Mrs. Frazor and her children relied on him to advise them in all matters relating to her treatment.

During this entire period while Mrs. Frazor was under Dr. Osborne's care the incision from her operations remained constantly open and infected which caused her severe pain and contributed to her condition of total disability. The incision continually drained and gave off sickening odors and required dressing approximately twice a day. In early 1953, Dr. Osborne, informed one of Mrs. Frazor's sons that it was probably caused from Mrs. Frazor's diabetic condition and that it would never heal. However, at no time during his treatment of Mrs. Frazor did Dr. Osborne probe the incision or attempt in any

other manner to determine the actual cause of the continuing condition. In May 1961, some members of Mrs. Frazor's family noticed that threads were beginning to work out of the incision, whereupon, they called Dr. Osborne's office and found that he was not available at that time, but his associate, Dr. Gillett, went to the Frazor home in his stead, probed the incision and removed portions of an imbedded sponge. Shortly thereafter, Dr. Don L. Eyler, an orthopedic surgeon, who had performed the operations originally, made a further probe of the incision and removed some remaining portions of the sponge, whereupon, within a few days the incision completely healed and never gave Mrs. Frazor any further trouble.

Dr. Osborne's last actual visit to see Mrs. Frazor occurred in November, 1960, whereas, according to the testimony of members of the family of Mrs. Frazor, the professional relationship between Dr. Osborne and Mrs. Frazor continued at least until May 2, 1961, which was the date on which the Frazor's attempted to get in touch with Dr. Osborne after they discovered threads working out of the wound and, finding him absent, obtained the services of his associate, Dr. Gillett, who was at that time treating Dr. Osborne's patients while he was temporarily away from his practice receiving special training.

There is some evidence in the record that Dr. Osborne's treatment of Mrs. Frazor's post-operative infection was not according to recognized medical standards and that, under the circumstances, he should have recognized the possibility of a foreign body in the wound and should have probed for the purpose of discovering such foreign body, and the failure to probe the wound or to take other

affirmative action during ten years of continuous infection constituted professional negligence.

As to the corporate defendant, Madison Hospital, there is evidence in the record to effect that radio opaque sponges were generally used in hospitals at that time and that a failure to use them proximately contributed to the failure to discover the imbedded sponge when Mrs. Frazor's hip was X-rayed.

## IV

### CONCLUSIONS OF LAW AND FACT

After hearing arguments on the motion for a directed verdict at the conclusion of plaintiff's proof, the Court made the following observation and ruling:

"The COURT: Well, gentlemen, I think you all know how I feel about directed verdicts, but I'm going to direct a verdict in this case. I think it's barred by the statute of limitations. I'm convinced of that. I've read some of the authorities that you all have cited and I've read some on my own, and I think it has been barred since sometime in 1961.

MR. WILLIS: Since what time, your Honor?

THE COURT: Sometime in 1961. The proof shows that the last time Dr. Osborne saw this patient was on November the 14th, 1960, so he couldn't have performed a negligent act after that and still have been within a period of one year, so I'm going to direct a verdict for Dr. Osborne and for the hospital. Call the jury in, Mr. Sheriff.''

It would thus seem that the only question for determination on this appeal-in-error is whether or not the

Trial Judge correctly applied the one year statute of limitations.

■ As to the Madison Sanitarium and Hospital, we are of opinion that his ruling was correct, consequently, the assignments of error with respect to the action of the Trial Judge in sustaining the motion for a directed verdict as to this defendant are overruled and the judgment of the Trial Court in that respect is affirmed.

■ As to his ruling in the case of the plaintiffs against Dr. J. W. Osborne, however, we are of the opinion that the evidence before the Court was such as to require submission of the case to the jury and that it was error for the Trial Judge to sustain the motion for directed verdict on the ground that the one year Statute of Limitations barred the action of the plaintiffs against Dr. Osborne.

It is apparent that the Trial Judge acted favorably on the proposition of continuing negligence on the part of Dr. Osborne since he held that the action was barred from sometime in 1961, the last operation of Mrs. Frazor having been performed in 1952. Thus, he acted on the fact as to when the doctor-patient relationship terminated, which we think was a question for the jury under the evidence.

Among the cases cited by counsel for plaintiff in support of their position is that of Tennessee Eastman Corporation v. Newman, 22 Tenn.App. 270, 121 S.W.2d 130, wherein the plaintiff was an employee of the defendant whose health had been impaired by defendant's negligent failure to provide exhaust fans and other health devices in the work area. This negligent omission had extended over a period of several years but had not been remedied until within one year of the date the action was brought. In that case the defendants argued that the action was

barred because the negligence had begun more than a year previously. However, the Court held to the contrary and, among other things, said:

"In this case we have a continuous act, or omission in violation of law, from which a continuous additional inquiry is inflicted with a cumulative result. In fact, it is one continuous tort, beginning with the employment and ending only at the time of total disability of the employee and the termination of his employment.

\* \* \* \* \* \*

"The court is of the opinion since the suit was instituted within one year of the disability and termination of employment ending the continuous tortious omission of duty by defendant, and the cumulative ill-effects thereof, and the statute of limitation is not applicable, and plaintiff is entitled to recover full damages for the injury sustained."

The continuing negligence theory by which the Statute of Limitations was held to have been tolled was also upheld in Steiner v Spencer, 24 Tenn.App. 389, 145 S.W. 2d 547, and in Federal cases including Union Carbide & Carbon Corp. v. Stapleton, 237 F.2d 229, 69 A.L.R.2d 1206 (6th Circuit), Armour & Company v. Mitchell, 262 F.2d 580 (6th Circuit) and several other cases from the 6th U.S. Circuit Court.

Counsel for plaintiffs in their well prepared brief state that, although there are no Tennessee cases applying the "continuing tort" principle to a physician's negligence, it is clearly applicable where continuing negligent treatment is shown and that this is borne out by numerous cases from other jurisdictions.

A case squarely in point is that of Williams v. Elias, 140 Neb. 656, 1 N.W.2d 121, wherein the Nebraska Court held that the Statute of Limitations did not begin to run until the defendant's negligent treatment of plaintiff ceased and quoted with approval the following headnote from a New York decision:

"Where a physician in performing an operation failed to remove a sponge from plaintiff's pelvic cavity, and did not remove it thereafter, though he continued to treat her for more than 2½ years, plaintiff's cause of action was not barred, * * * because suit was not brought till more than 2 years after the operation; the tort being continuing, and the period of the statute not beginning to run until the physician ceased his treatments." Sly v. Van Legen, 120 Misc. 420, 198 N.Y.S. 608.

Another case that seems to be in point is Thatcher v. DeTar, 351 Mo. 603, 173 S.W.2d 760, (1943), wherein the plaintiff sued his physician for negligently failing to discover a needle which had been left in his body during an operation some three years previous but where the defendant had continued to treat the plaintiff following the operation until shortly before the action was filed against him. In that case, the Court said:

"An examination of the cases convinces us that the overwhelming weight of authority is that where the facts are as disclosed in plaintiff's petition the statute of limitations does not begin to run until treatment of plaintiff's ailment by the defendant ceases."

The continuing tort principle was also applied to continuing medical treatment in Hundley v. St. Francis Hospital, 161 Cal.App.2d 800, 327 P.2d 131, 80 A.L.R.2d

360; DeHaan v. Winter, 258 Mich. 293, 241 N.W. 923; Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96; DeLong v. Campbell, 157 Ohio St. 22. 104 N.E.2d 177; Hotelling v. Walther, 169 Or. 559, 130 P.2d 944, 144 A.L.R. 205; and Lotten v. O'Brien, 146 Wis. 258, 131 N.W. 361.

It is to be pointed out that in Hundley v. St. Francis Hospital, supra, the Court held that the statute of limitations did not begin to run so long as there was a continuing professional relationship between the doctor and patient and that the relationship continued so long as plaintiff maintained confidence in the defendant and continued to rely upon him for treatment of the condition in question. To the same effect is Thatcher v. DeTar, supra, where it was held that the statute began to run only when the plaintiff terminated the doctor-patient relationship by obtaining the services of another physician.

Bearing in mind that there is evidence in this case to indicate that the professional relationship between the decedent and the defendant, Dr. J. W. Osborne, did not cease until the discovery of the imbedded sponge in May 1961, or sometime after that, it is our view that the evidence is such that the question of whether or not this professional relationship did continue until within one year of the filing of the suit is one that should have been submitted to the jury, and, if found by the jury that said relationship continued until within the statutory period of one year, the question of liability for negligence would have been for the jury to decide.

For the foregoing reasons the assignments of error with respect to the action of the trial court in the case against Dr. Osborne are sustained and the cause is reversed and remanded for a new trial.

Affirmed in part, reversed in part and remanded.

Humphreys and Puryear, JJ., concur.