**Joann HOUSH, Plaintiff/Appellant,**

v.

**J. Tom MORRIS, M.D., Drs. Stratton, Boals, Tabor and Morris, a partnership; and the Office of Bone and Joint Surgery, P.C., a corporation, Defendants/Appellees.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

May 31, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 30, 1991.

John R. Johnson, III, Memphis, for plaintiff/appellant.

Albert C. Harvey, Elizabeth T. Collins, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, for defendants/appellees.

FARMER, Judge.

This is an appeal from a directed verdict in favor of the defendant thereby dismissing plaintiff's action as barred by the statute of limitations.

The plaintiff, Joann Housh, was born with a hip problem. This congenital hip problem resulted in both hips being out of place. The plaintiff had an operation on her hips when she was seven years old.

Thereafter, she maintained a normal childhood. She has walked with a limp throughout her life because her left leg was one-half inch shorter than her right leg. At the time of trial she was 57 years old. However, she led an active life.

Ms. Housh first met the defendant, Dr. Tom Morris, in July 1980 when she was seen by him in a hospital emergency room after having injured her ankle. Upon examination Dr. Morris discovered that Ms. Housh had broken her ankle and he began to instruct her on the proper use of crutches. Ms. Housh informed Dr. Morris that she had used crutches when she was a small child. Dr. Morris learned of Ms. Housh's congenital hip problem. Dr. Morris informed Ms. Housh that he could x-ray her hips if she desired and tell her if anything of significance was wrong.

On Ms. Housh's next visit to Dr. Morris he x-rayed her hips. Dr. Morris told the plaintiff about a hip replacement surgery he had often performed. Allegedly Dr. Morris only informed the plaintiff about his successes that had occurred relative to this surgery. On a subsequent visit to Dr. Morris he showed Ms. Housh the prosthesis that would be implanted during the surgery. Ms. Housh testified that Dr. Morris never discussed any of the risks that might be associated with the surgery. Ms. Housh understood that the operation would make her legs the same length and enable her to walk without a limp.

Ms. Housh signed a consent form for Dr. Morris to perform the surgery. On June 8, 1981, he performed the surgery on her right hip and on June 23, 1981 he operated on her left hip. Subsequently, it was determined that one of her hips was dislocated and a second procedure was required. It was after this procedure that Ms. Housh became aware of an infection. Ms. Housh was treated for this infection and her condition somewhat improved.

Ms. Housh went home in a cast and could not return to work until November or December of that year. When she first returned to work she got around on crutches, but later her condition worsened and she had to use a wheelchair. In January 1982 Dr. Morris informed Ms. Housh that the infection was returning. In March of 1982 Dr. Morris wrote a letter to Ms. Housh's employer stating that she was totally and permanently disabled. In August 1982 part of the prosthesis that was implanted during the surgery was removed. On March 8, 1983 the remainder of the prosthesis was removed. Ms. Housh continued to regularly see Dr. Morris, and he continued to tell the plaintiff that her X rays looked good and that she would walk again.

In September 1983, Ms. Housh saw another orthopedic surgeon, Dr. Michael Lynch. Dr. Lynch took X rays which indicated that the prognosis was not good. Ms. Housh testified that she didn't know until her visit with Dr. Lynch that the operation wasn't going to work. Dr. Lynch has been able to do very little to improve Ms. Housh's condition other than give her medication to relieve the pain. Ms. Housh has not been able to walk without the aid of a walker since she went into the hospital. Ms. Housh testified that, if Dr. Morris had informed her of the risks of dislocation, infections, and potential failure of the procedure she would not have undergone the operation.

On June 22, 1984, Ms. Housh filed a complaint against the defendant whereby she alleged that:

2. Plaintiff would show that she has always suffered from congenital defects of her hips. That in August, 1980, she broke her ankle and that the defendant, Morris, was the physician who was on duty in the hospital emergency room at that time, and who set her ankle. That at that time, defendant, Morris, described to her the hip joint replacement operation, otherwise known as a bilateral total hip replacement arthroplasty. That defendant told plaintiff that he had been doing these procedures for twelve years and had never seen one fail and that he could almost "guarantee" that one would last for fifteen years. That upon defendant's assurances as aforesaid, plaintiff entered the hospital on or about June, 1981 for a right total hip and left total hip replacement. That post-operatively,

plaintiff underwent two more procedures; one in August, 1982, as a result of infection. That in said hospitalization of August, 1982, the left femoral unit was removed, but the acetabular component was left in place. That the infection recurred, and a further surgery was required in March, 1983, to remove the acetabular cup. That since said last procedure, she has had to use a walker for ambulation, having very poor stability and balance on the left.

3. Plaintiff would show that at no time did defendant, Morris, advise her of the risk of the bilateral total hip replacement arthroplasty, and particularly the increased risk for a patient with congenital hip disease. Plaintiff avers that said procedure was contraindicated in her case, and that had she known of the risks of said procedure, she would not have undergone same. Plaintiff would show that defendant, Morris, never advised her that said operation was a failure, and even on her last visit on or about June 22, 1983, advised her that her x-rays looked good and that she should be walking without a walker soon. Plaintiff has since, on or about September, 1983, been advised that the left total hip operation was a total failure and that a further procedure for the right hip would be too risky in light of the anticipated benefits. Plaintiff therefore avers that defendant, Morris, concealed her cause of action from her.

Prior to trial, summary judgment was granted in favor of defendant on the issue of his alleged negligence in performing the surgery. The case came to trial on June 4, 1990 and, at the close of plaintiff's proof, the defendant moved for a directed verdict on the basis that the claim was barred by the one-year statute of limitations and on the basis that the plaintiff failed to establish a prima facie case for lack of informed consent. The trial court held in part that:

In light of the absence of any showing of fraudulent concealment the plaintiff's complaint was not filed within the applicable statute of limitations by plaintiff....

It is from this judgment that the plaintiff now appeals. The issue as set forth by the appellant is:

Whether the trial court erred in granting defendants' motion for directed verdict at the close of the plaintiff's proof, based upon defendants' defense that the statute of limitations had run.

The plaintiff's basic cause of action is founded on the theory of lack of informed consent. The plaintiff contends that the defendant did not inform her of the risk associated with the surgery she underwent; therefore, the plaintiff never effectively consented to it. Specifically, Ms. Housh contends that Dr. Morris did not inform her of the risk of failure of the operation, infections, and dislocation.

■ A cause of action based on the lack of informed consent stems from the basic premise that a patient should be allowed to form an intelligent choice about the surgical and/or treatment procedures that he/she undertakes. *Ball v. Mallinkrodt Chemical Works*, 53 Tenn.App. 218, 381 S.W.2d 563 (Tenn.Ct.App.1964); *Ray v. Scheibert*, 484 S.W.2d 63 (1972). These types of cases, which are predicated upon the theory that the physician committed a battery upon the patient as opposed to medical malpractice cases based upon negligent or unskilled treatment, apply the basic rule,

"(a) That a person (in possession of his faculties and in such physical health as to be able to be consulted as to his condition and no emergency existing making it impracticable to confer with him) has the right to say whether or not any contemplated surgical operation shall be performed upon him; (b) that a surgical operation performed upon such a person without his consent is wrongful and unlawful and amounts to a trespass upon the person and is assault and battery; (c) that such person may maintain an action against the surgeon for damages, if any have been sustained, because of such wrongful operation; and (d) such an action may be maintained though the surgeon was learned and skillful and exercised due care and skill in all he did."

*Ray,* 484 S.W.2d at 70–71, *quoting Hershey v. Peake,* 115 Kan. 562, 223 P. 1113, 1114 (1924). Therefore, when a physician performs surgery without the requisite consent and absent an emergency, then the physician is liable for the resulting injuries regardless of whether the injuries were the consequence of negligence or otherwise.[1] *Ray,* 484 S.W.2d at 71.

■ The defendant contends that the present action is barred by the statute of limitations in that one year has passed since the discovery of such action. The statute of limitations applicable to the present case is set forth in T.C.A. § 29–26–116 which provides:

**Statute of limitations—Counterclaim for damages.**—(a)(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28–3–104.

(2) In the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.

(3) In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

(4) The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

(b) In any action for damages for personal injury or death, whether based on tort or contract law, or otherwise, a counterclaim for damages for malicious prosecution (on the ground that the principal action was instituted with improper intent and without probable cause) or malicious abuse of process (on the ground that there was an improper use with improper intent of the process) in filing such action may be filed and litigated in the same action; provided, however, that the counterclaim shall be based upon substantial allegations.

Discovery within the meaning of this statute refers to the "discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor," *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d 355, 359 (Tenn.Ct.App.1986), or "when in the exercise of reasonable care and diligence, it should have been discovered." *Bennett v. Hardison,* 746 S.W.2d 713, 714 (Tenn.Ct.App.1987), *quoting McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn.1975).

Sometime shortly after the surgery was performed on the plaintiff's left hip on June 23, 1981, the left hip became dislocated and infected. At this point the plaintiff certainly knew or discovered that she had a cause of action based on lack of informed consent because she had not been told that these risks may occur. The plaintiff also contends, however, that she didn't discover that the operation was a failure until she went to see Dr. Lynch in September of 1983. We are of the opinion that the plaintiff knew or reasonably should have known that the surgery was a failure when the remainder of the implanted prosthesis was removed on March 8, 1983. Furthermore, the plaintiff certainly should have been put on notice on March 23, 1982 that the operation was anything but a success when Dr. Morris wrote a letter to her employer on her behalf stating that:

---

1. T.C.A. § 29–26–118 sets forth the plaintiff's burden under the theory of lack of informed consent. It provides that:

**Proving inadequacy of consent.**—In a malpractice action, the plaintiff shall prove by evidence as required by § 29–26–115(b) that the defendant did not supply appropriate information to the patient in obtaining his in-

formed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which he practices and in similar communities.

I feel that Mrs. Housh is totally and permanently disabled to do any type of work at this time, as she is in a moderate amount of pain throughout the day, particularly with weight bearing and some pain with non-weight bearing.

The complaint was not filed until June 22, 1984. Although the plaintiff may not have realized the extent of her injuries until she visited Dr. Lynch, this doesn't change the fact that she knew she had a right of action long before such time. As stated in *Bennett v. Hardison*,[2] 746 S.W.2d 713 (Tenn. Ct.App.1987), "[a] plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong." *Id.* at 714, *quoting Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864–865 (Tenn.1983).

 Ms. Housh also alleges that there is sufficient evidence in the record of Dr. Morris' fraudulent concealment so as to toll the running of the statute of limitations. On a motion for directed verdict the court must take the strongest legitimate view of the evidence in favor of the opponent and all reasonable inferences drawn from the evidence must be drawn in the opponent's favor. All countervailing evidence must be discarded, and if there exists any dispute as to any material evidence or any doubtful conclusions drawn from the evidence as a whole, then the motion must be denied. *Tennessee Farmers Mutual Insurance Company v. Hinson*, 651 S.W.2d 235 (Tenn.Ct.App.1983).

If a physician fraudulently conceals a cause of action, the statute of limitations will be tolled during the period of concealment. *See* T.C.A. § 29–26–116; *Ray*, 484 S.W.2d at 72. Basically, fraudulent concealment will be shown where the physician had knowledge of the wrong done and concealed such information from the patient. *Ray*, 484 S.W.2d at 72; *Hall v. De Saussure*, 41 Tenn.App. 572, 297 S.W.2d 81 (1956). Honest mistakes on the part of the physician, however, standing alone are not sufficient evidence to establish fraudulent concealment. *Ray*, 484 S.W.2d at 72. The only fraudulent concealment which is alleged in the present case is the fact that the defendant continued to encourage Ms. Housh and tell her that she would walk again. Assuming arguendo that the physician's beliefs were not honest, we are of the opinion that the physician's statements at best only concealed the "extent" of the plaintiff's injuries. This simply will not operate to toll the statute of limitations. The plaintiff still had knowledge that dislocation had occurred, that the infection had resulted, that the operation was anything but a success, and that she had become totally and permanently disabled. There is no evidence that the doctor concealed this information.

 Finally, Ms. Housh argues that the one-year statute of limitations is inapplicable because the instant action is based on a "continuous tort" theory. In support of her argument she cites *Frazor v. Osborne*, 57 Tenn.App. 10, 414 S.W.2d 118 (1966). In *Frazor* a surgical sponge was left in the plaintiff's body following an operation performed in 1952. The plaintiff continued under the defendant's care for the next ten years until the sponge was discovered and removed in May of 1961. A malpractice action was commenced within one year thereafter. The trial court found that the action was barred by a one-year statute of limitations. The Middle Section of this Court held that the question of whether or not this professional relationship continued until within one year of filing suit was a

---

**2.** In *Hardison* the plaintiff underwent a surgical procedure for the removal of a wisdom tooth. The tooth was removed by the defendant on February 24, 1984. The defendant informed the plaintiff that he would experience temporary numbness after the surgical procedure. The plaintiff contended that he did not learn that this numbness was permanent until Dr. Draper informed him of such in October 1984. The court held that "[e]ven though plaintiff may have been justified in accepting a brief period of numbness as a necessary incident of the surgery, absent evidence of some unusual cause for the delay, the defendant was not justified in delaying the 'discovery' of the permanence of his injury from February 24, 1984, until 'around October, 1984'.... At some time ... any reasonable person would have concluded that the brief, temporary numbness ... [was] an unacceptable incident to the surgery." 746 S.W.2d at 714.

jury question. 57 Tenn.App. at 20, 414 S.W.2d at 123; *See also Tennessee Eastman Corp. v. Newman,* 22 Tenn.App. 270, 121 S.W.2d 130 (1938) and *Steiner v. Spencer,* 24 Tenn.App. 389, 145 S.W.2d 547 (1940).[3] Since the holding in *Frazor,* however, our courts have adopted and continuously applied the "discovery rule." This doctrine is codified and made applicable to malpractice actions by T.C.A. § 29–26–116. The present action is governed by T.C.A. § 29–26–116.[4] Furthermore, the plaintiff does not contend any surgery was performed after the dislocation was corrected; therefore, the idea of a continuing battery is simply not feasible. *See Ray,* 484 S.W.2d at 72.

After careful consideration of all the facts and circumstances in this case, we affirm the judgment of the trial court. The costs of this appeal are taxed to the appellant for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.

---

**3.** In *Tennessee Eastman* and *Steiner* the plaintiffs contracted occupational diseases as a result of exposure to soda ash and lead dust. These cases held that the theory of "continuous tort" was applicable and the employees' cause of action did not accrue until the employer/employee relationship was terminated.

**4.** *See Kenton v. United Technology, et al.,* 15 T.A.M. 18–8, 1990 WL 32121 (Tenn.Ct.App. 1990), for a similar conclusion.