FILED

06/30/2021

Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
September 30, 2020 Session[1]

## SNAKE STEEL, INC. v. HOLLADAY CONSTRUCTION GROUP, LLC

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 17-1037-III    Ellen Hobbs Lyle, Chancellor**

———————————————————

**No. M2019-00322-SC-R11-CV**

———————————————————

This appeal requires us to interpret provisions in the Prompt Pay Act, Tennessee Code Annotated sections 66-34-101 to -704, regarding retainage withheld on construction projects. The Prompt Pay Act requires the party withholding retainage—a percentage of total payment withheld as incentive for satisfactory completion of work—to deposit the funds into a separate, interest-bearing escrow account. Failure to do so results in a penalty of $300 per day. In this case, both parties agree the subcontractor's retainage was not placed into an interest-bearing escrow account, and the retainage was not timely remitted to the subcontractor. Three years after completing its work on the contract, the subcontractor sued the contractor for unpaid retainage plus amounts due under the Prompt Pay Act. The contractor soon tendered the retainage; consequently, only the statutory penalty is at issue in this appeal. Tennessee Code Annotated section 66-34-104(c) states that, for persons required to deposit retainage into a separate interest-bearing escrow account, the penalty is assessed "per day for each and every day" retainage is not so deposited. Consonant with the statute's language, its objective, the wrong the Prompt Pay Act seeks to prevent, and the purpose it seeks to accomplish, we hold that the $300 per day penalty is assessed each day retainage is not deposited in a statutorily-compliant escrow account. Consequently, while the subcontractor's claim for the statutory penalty is subject to the one-year statute of limitations, if the subcontractor can establish that the contractor was required to deposit the retainage into an escrow account, the subcontractor is not precluded from recovering the penalty assessed each day during the period commencing 365 days before the complaint was filed. Accordingly, we reverse in part the trial court's grant of summary judgment to the contractor and remand to the trial court for further proceedings.

---

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed in Part and Reversed in Part;**
**Remanded to the Davidson County Chancery Court**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined. CORNELIA A. CLARK, J., filed a concurring opinion in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, J., joined.

Gregory L. Cashion and Petar A. Angelov, Nashville, Tennessee, for the appellant, Holladay Construction Group, LLC.

Dan E. Huffstutter, Nashville, Tennessee, for the appellee, Snake Steel, Inc.


# OPINION
## FACTUAL AND PROCEDURAL BACKGROUND

This case began as a simple contract dispute. Defendant-Appellant Holladay Construction Group, LLC ("Holladay") is a Tennessee-licensed general contractor. The owner of a construction site in Nashville, 2200 Charlotte Avenue, LLC ("Owner"), hired Holladay to provide general contracting services for a construction project.

In turn, Holladay hired Plaintiff-Appellee Snake Steel, Inc. ("Snake Steel"), a Tennessee corporation, as a subcontractor "to provide structural and miscellaneous steel" work as part of the larger construction project.

On approximately October 8, 2013, Holladay and Snake Steel memorialized their agreement in a written contract (the "Sub-Contract"). Initially, the Sub-Contract provided for Holladay to pay Snake Steel $336,722.00 for its work. An approved modification increased Snake Steel's compensation to $365,411.52. In the Sub-Contract, Snake Steel agreed its payment from Holladay would be contingent on Holladay receiving payment for the construction project from Owner.

The Sub-Contract also allowed Holladay to withhold a five-percent retainage from Snake Steel's compensation until Snake Steel substantially completed its work. The retainage withheld amounted to $18,270.58.[2]

By September 30, 2014, Snake Steel had completed its work.[3] On October 24, 2014, Holladay paid Snake Steel all amounts requested except the retainage and $32,480.00[4] in additional work done pursuant to a change order.

In May 2015, Holladay asked Owner to release its retainage, which included the retainage amount owed to Snake Steel. Owner released it to Holladay on May 27, 2015.

In February 2016, Snake Steel submitted a pay application to Holladay for its retainage. Holladay did not pay the retainage. In September 2017, Snake Steel sent Holladay a certified notice that it had not yet received its retainage.[5]

In September 2017, some three years after completion of its work under the Sub-Contract, Snake Steel filed suit against Holladay in the Davidson County Chancery Court. The lawsuit asserted that Snake Steel performed all of its obligations under the Sub-Contract, but Holladay failed to pay either the retainage or compensation for agreed change order work. The complaint sought damages for these two breaches of the Sub-Contract.

Pertinent to this appeal, the complaint also alleged Holladay was liable for failing to comply with the Prompt Pay Act, Tennessee Code Annotated sections 66-34-101 to -704.[6] In brief, the Prompt Pay Act requires retainage for the improvement of real property to be deposited into a separate interest-bearing escrow account. Tenn. Code Ann. § 66-34-

---

[2] In its complaint, Snake Steel says the retainage amount was $18,720.58. However, the underlying documents in this case, including the relevant certificate of payment, state the amount as $18,270.58. The parties acknowledged this fact in their Joint Stipulations of April 2018.

[3] In the record, two pay applications for the period ending September 30, 2014, one for Snake Steel and for Holladay, reflect completion of Snake Steel's work.

[4] While the parties provided differing amounts in their Joint Stipulations, $32,480.00 is the amount of the November 10, 2017 settlement check tendered to Snake Steel. Regardless, the parties do not dispute the amount.

[5] Holladay received the notice two days later.

[6] Unless otherwise noted, we refer to the version of the Prompt Pay Act in effect at the time of the events in this lawsuit.

104(a) (2015).[7] If the party responsible for establishing the escrow account fails to do so, the Act requires that party to pay the owner of the retainage a penalty of $300 per day. *Id.* § 66-34-104(c). There is no evidence that Snake Steel's retainage was ever placed in an interest-bearing escrow account, while it was in either Owner's or Holladay's possession. In addition to other damages, Snake Steel's complaint sought all amounts due under the Prompt Pay Act.

In October 2017, Holladay tendered a check to Snake Steel for the retainage, $18,270.58. Initially, Snake Steel refused to accept the payment. Holladay then filed its answer, responding that Snake Steel was not entitled to payment for the additional work, noting that Snake Steel had refused tender of the retainage, and denying liability under the Prompt Pay Act.

In December 2017, Holladay tendered Snake Steel payment for both the retainage and the change order work. Snake Steel accepted this payment.

In April and June 2018, the parties filed a series of joint stipulations acknowledging Snake Steel had accepted Holladay's payment of the retainage and change order amounts. They agreed this payment mooted any issues regarding Holladay's alleged breach of the Sub-Contract. The joint stipulations clarified that the primary issue remaining in dispute was whether Holladay was liable to Snake Steel for its failure to comply with the Prompt Pay Act.[8]

The parties filed cross-motions for summary judgment.[9] The trial court granted summary judgment in favor of Holladay. It agreed with Holladay that Snake Steel's claim

---

[7] Some exceptions may apply. *See, e.g.*, Tenn. Code Ann. § 66-34-103(d).

[8] The parties also continued to dispute Holladay's liability for Snake Steel's attorney fees and costs.

[9] In its motion for summary judgment, Snake Steel took the position that Holladay was required to deposit retainage into an escrow account between October 2013 and May 27, 2015, while Owner was withholding retained funds, including subcontractor retainage. In response, Holladay asserted that Tennessee Code Annotated section 66-34-103(d) limited its potential responsibility for depositing subcontractor retainage into an escrow account to the time period after Owner released its retained funds to Holladay. Section 103(d) states:

> In the event that an owner or prime contractor withholds retainage that is for the use and benefit of the prime contractor or its subcontractors pursuant to § 66-34-104(a) and (b), neither the prime contractor nor any of its subcontractors shall be

under the Prompt Pay Act was barred under the one-year statute of limitations in Tennessee Code Annotated section 28-3-104(a)(1)(C).[10]  Snake Steel appealed the trial court's ruling.

The Court of Appeals affirmed the trial court's application of the one-year statute of limitations.  *Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, No. M2019-00322-COA-R3-CV, 2020 WL 365304, at *6 (Tenn. Ct. App. Jan. 22, 2020), *perm. app. granted*, (Tenn. June 4, 2020).  It disagreed, however, with the trial court's ultimate conclusion.  The intermediate appellate court applied the discovery rule to Snake Steel's claims under the Prompt Pay Act.  *Id.* at *8.  It did not decide definitively that the rule operated to toll the statute of limitations, because the trial court had not determined when Snake Steel knew or should have known the retainage had not been deposited into an escrow account, as required by the discovery rule.  The Court of Appeals directed the trial court to determine the issue on remand.  *Id*.  Finally, the Court of Appeals held that, even if Snake Steel's claim under the Prompt Pay Act accrued more than one year before the complaint was filed, Holladay could be held liable for the $300 per day statutory penalty for the 365 days prior to the filing of the complaint.  *Id.* at *9.  Thus, the intermediate appellate court vacated the trial court's entry of summary judgment and remanded the case.  *Id.* at *10.

Holladay then sought permission to appeal to this Court, which we granted.

### STANDARD OF REVIEW

This appeal requires us to review a grant of summary judgment.  Such rulings are reviewed by this Court de novo, affording the trial court no presumption of correctness.  *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

---

required to deposit additional retained funds into an escrow account in accordance with 66-34-104(a) and (b).

Tenn. Code Ann. § 66-34-103(d). The trial court did not resolve this issue or any issue regarding the applicability of section 103(d), and the parties raise no issue regarding this section on appeal.  We expressly decline to address in this opinion any issue regarding section 103(d) and assume for purposes of this appeal that Holladay was required to place Snake Steel's retainage into escrow.

[10] The trial court, however, granted summary judgment in favor of Snake Steel as to interest under the Prompt Pay Act and attorney fees and costs incurred up to the date Holladay tendered payment for the retainage and change order.  This ruling is not raised as an issue in this appeal.

ANALYSIS

We begin with a brief overview of the Prompt Pay Act, then review the Court of Appeals' holding as to the discovery rule, and finally review the intermediate appellate court's holding that Snake Steel is not precluded from recovering the statutory penalty for each of the 365 days preceding the filing of its complaint.

### *Prompt Pay Act*

The Prompt Pay Act was enacted in 1991.[11]  *See* Tenn. Code Ann. § 66-34-101 (2015) (stating the Act "may be cited as the 'Prompt Pay Act of 1991.'").  As our Court of Appeals has observed, the Act was intended "to provide for timely payments to contractors, subcontractors, materialmen, furnishers, architects, and engineers and to provide for interest on late payments." *Beacon4, LLC v. I & L Invs., LLC*, 514 S.W.3d 153, 212 (Tenn. Ct. App. 2016) (quoting Prompt Pay Act of 1991, ch. 45 (H.B. 875), *overruled in part on other grounds by In re Mattie L.*, 618 S.W.3d 335 (Tenn. 2021).  It is a remedial statute, designed to help protected individuals and entities timely recover the full amount of funds they have already earned.  *Id.*

To encourage satisfactory completion of construction work, the Act permits construction contracts to provide for the withholding of retainage up to five percent of the amount of the contract.  Tenn. Code Ann. § 66-34-103(a) (2015).[12]  The Act includes deadlines for owners who withhold retainage to pay it to prime contractors after completion or substantial completion of the construction work.  *Id.* § 66-34-103(b).  After that is done, the Act provides deadlines for prime contractors to pay subcontractors and in turn for subcontractors to pay "subsubcontractors" and material suppliers.  *Id.*  The Act makes violation of these provisions a misdemeanor, subject to a fine of $3000.  *Id.* § 66-34-103(e)(1)–(2).  Each day of failure to comply is a separate violation, with punishment for each violation "consecutive to all other such violations."  *Id.* § 66-34-103(e)(2)(C).

---

[11] We outline the Prompt Pay Act as it stood at the time of the events in this case.  The Act was amended in 2020.  *See* Act of June 22, 2020, ch. 749, §§ 17–34, 2020 Tenn. Pub. Acts 716 (codified in various sections of Tennessee Code Annotated Title 66, Chapter 34).

[12] The term "retainage" is not defined in the Prompt Pay Act.  *See* Tenn. Code Ann. § 66-11-101 (2015) (definitions incorporated into the Prompt Pay Act by Tennessee Code Annotated section 66-34-102).  In general, it means the "percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired." *Retainage*, Black's Law Dictionary (11th ed. 2019).  In this case, Owner withheld a larger retainage from Holladay, the general contractor, which included the retainage due Snake Steel under the Sub-Contract.

Important to this appeal, when retainage is withheld in a contract for improvement of real property, the Prompt Pay Act requires the person withholding the retainage to deposit it "in a separate, interest-bearing, escrow account with a third party which must be established upon the withholding of any retainage." Tenn. Code Ann. § 66-34-104(a).[13] The retained funds become the property of the contractor to whom the retainage is owed, subject to default or failure to complete the work. *Id.* § 66-34-104(b). Compliance with the escrow account provision is "mandatory, and may not be waived by contract." *Id.* § 66-34-104(j).

In 2010, the General Assembly amended section 66-34-104 to provide that if the party withholding the retained funds fails to deposit them into such an escrow account, that party becomes responsible for paying the owner of the retainage $300 per day for each day the retained funds are not deposited into an escrow account. Act of Apr. 19, 2010, ch. 875, § 1, 2010 Tenn. Pub. Acts 1. In 2012, the legislature amended this provision to specify that the $300 per day is a "penalty." Act of Mar. 12, 2012, ch. 609, § 4, 2012 Tenn. Pub. Acts 1, 1. Accordingly, at the time of the events in this case, that provision read:

> In the event that the party withholding the retained funds fails to deposit the funds into an escrow account as provided herein, such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300) penalty per day for each and every day that such retained funds are not deposited into such escrow account.

Tenn. Code Ann. § 66-34-104(c).

In sum, the Prompt Pay Act allows the withholding of retainage but compels prompt payment upon completion by substantial criminal fines. It removes the motivation for payment delays by requiring retainage to be deposited in an escrow account, enforceable by a substantial penalty.

In this case, the retainage itself is not at issue; Holladay paid the retainage to Snake Steel while the case was pending before the trial court. It is undisputed that Holladay never deposited Snake Steel's retainage into an escrow account after Owner remitted the overall

---

[13] Section 66-34-103(d) provides a caveat to the requirement established in section 104(a) and identifies certain situations in which "additional retained funds" are not required to be placed in escrow. *See* Tenn. Code Ann. § 66-34-103(d).

retainage on the contract to Holladay.  The question on appeal centers on the $300 per day penalty as outlined in section 66-34-104(c).[14]

## *Discovery Rule*

In this appeal, the parties do not dispute the holding of both the trial court and the Court of Appeals that the one-year statute of limitations in Tennessee Code Annotated § 28-3-104(a)(1)(C) applies to Snake Steel's penalty claim.[15]  They disagree vigorously, however, about the effect of the one-year statute of limitations on the claim.

In assessing the effect of the statute of limitations, the Court of Appeals applied the discovery rule to Snake Steel's claims under the Prompt Pay Act for the $300 per day penalty.  The intermediate appellate court reasoned that application of the rule was appropriate "to prevent the inequity that would result from a strict application of the one-year statute of limitations 'at a time when injury is unknown and unknowable.'"  *Snake Steel, Inc.*, 2020 WL 365304, at *8 (quoting *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974)).  Respectfully, we disagree with the Court of Appeals' holding that the discovery rule is applicable in this case.

"[T]he discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained."  *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (citing *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994)).  We initially adopted the rule for medical malpractice cases.  *See Teeters*, 518 S.W.2d at 515–16.  Since then, we have applied it to a variety of tort actions, such as products liability, legal malpractice, and dental malpractice, but have declined to do so in cases involving claims for defamation or conversion of negotiable

---

[14] As noted in footnote 9 above, we assume for purposes of this appeal that Holladay was required to place Snake Steel's retainage into escrow.

[15]  In pertinent part, the statute of limitations provision states:
[T]he following actions shall be commenced within one (1) year after the cause of action accrued:
. . . .

(C) *Actions for statutory penalties*.
Tenn. Code Ann. § 28-3-104(a)(1)(C) (emphasis added).  The language of this statute of limitations is to "be strictly construed."  *Id.* § 28-3-104(a)(3).

instruments. *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 710 (Tenn. 2019) (collecting authority).

In *Individual Healthcare*, the Court discussed whether the discovery rule should be applied to breach-of-contract claims, noting the Court of Appeals has held the discovery rule may be applied if the breach alleged by the plaintiff is "inherently undiscoverable." *Id.* (quoting *Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at \*11 (Tenn. Ct. App. Nov. 9, 2005)). Ultimately, the Court declined to either reject or adopt the holding in *Goot* because the contract breach in *Individual Healthcare* did not qualify as "inherently undiscoverable" under any standard. *Id.* at 712.

In this case, Snake Steel urges us to affirm the Court of Appeals' application of the discovery rule to its claim for statutory penalties under the Prompt Pay Act. It argues that information about whether its retainage was properly deposited into a separate interest-bearing escrow account was "inherently undiscoverable," similar to *Goot*. Snake Steel cites no cases in which the discovery rule has been applied to a claim for penalties, as opposed to compensation for injury or harm.[16] *Cf. Gabeli v. SEC*, 568 U.S. 442, 451–52 (2013) (citations omitted) ("The discovery rule helps to ensure that the injured receive recompense. But this case involves penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers. Chief Justice Marshall used particularly forceful language in emphasizing the importance of time limits on penalty actions, stating that it 'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" (quoting *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1805))).

Regardless, it cannot be said that Holladay's failure to deposit Snake Steel's retainage funds in an appropriate escrow account was "inherently undiscoverable." The obligation to deposit such funds in an escrow account was set forth in a state statute; it was public knowledge and obviously available to both parties in this case. Nothing in the record indicates that Snake Steel even asked Holladay if the funds were in an escrow account until this lawsuit was filed.[17] As in *Individual Healthcare*, "even if we were to adopt the *Goot* 'inherently undiscoverable' discovery rule . . . , these facts do not meet that standard." 566

---

[16] The cases cited by Snake Steel involve injury or harm, not claims for a statutory penalty. *See Terry v. Niblack*, 979 S.W.2d 583 (Tenn. 1998) (negligence); *Hunter v. Brown*, 955 S.W.2d 49 (Tenn. 1997) (sexual abuse); *Potts v. Celotex Corp.*, 796 S.W.2d 678 (Tenn. 1990) (products liability); *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982) (medical malpractice).

[17] Neither party was aware of the statutory requirement to place retainage funds in a separate interest-bearing escrow account until Snake Steel prepared to file its lawsuit against Holladay.

- 9 -

S.W.3d at 715.  Accordingly, we respectfully decline to apply the discovery rule to Snake Steel's claim for statutory penalties.

After holding the discovery rule was applicable to Snake Steel's penalty claim, the Court of Appeals found there was a genuine issue of material fact as to when Snake Steel "learned or should have learned that its retainage was not in an interest-bearing escrow account" as required by the Prompt Pay Act, so it remanded the case to the trial court for a determination of this issue.  *Snake Steel, Inc.*, 2020 WL 365304, at \*8.  Because we decline to apply the discovery rule to Snake Steel's claim, this is no longer a material fact, and remand for a determination of this issue is no longer necessary.

### *Application of Statute of Limitations*

The trial court found Snake Steel's claim for statutory penalties arose no later than February 19, 2016, the day Snake Steel submitted a pay application for the entire amount of retainage.  Snake Steel filed its complaint on September 25, 2017, well over a year later.  The trial court concluded Snake Steel's claim for penalties under the Prompt Pay Act was entirely barred by the one-year statute of limitations, so it granted summary judgment in favor of Holladay.

On appeal to the Court of Appeals, Snake Steel contended Tennessee Code Annotated section 66-34-104(c) should be interpreted to mean that each day Holladay failed to deposit Snake Steel's retainage into an escrow account, Holladay incurred a new, separate $300 penalty.  Under this interpretation, even if Snake Steel were unable to recover some of the penalties because of the one-year statute of limitations, it should still be permitted to recover daily penalties for the year prior to the date on which Snake Steel filed its complaint.  *Id.* at \*9.  The Court of Appeals agreed.  If Holladay failed to deposit Snake Steel's retainage into an escrow account as required under section 66-34-104(a) and Snake Steel were unable to rely on the discovery rule, the Court of Appeals held, Snake Steel was "still entitled to statutory penalties for each of the 365 days leading up to [Snake Steel's] filing of its complaint on September 25, 2017, and beyond."  *Id.*

On appeal to this Court, Holladay argues the Court of Appeals' interpretation of section 66-34-104(c) is contrary to the purpose of statutes of limitations and would render this one virtually meaningless.  This interpretation, it asserts, would expose construction companies to indefinite liability for claims under the Act.  Holladay likens this case to cases involving the continuous tort doctrine, citing *Kenton v. United Technology*, Shelby Law No. 71, 1990 WL 32121 (Tenn. Ct. App. Mar. 26, 1990).  In that case, the Court of Appeals explained the doctrine was applicable where there was "a continuous act, or omission in

- 10 -

violation of law, from which a continuous additional in[jury] is inflicted with a cumulative result." *Id.* at \*3 (quoting *Frazor v. Osborne*, 414 S.W.2d 118, 122 (Tenn. Ct. App. 1966), *abrogation on other grounds recognized by Stanbury v. Bacardi*, 953 S.W.2d 671 (Tenn. 1997)).  Under the continuous tort doctrine, Holladay maintains, the cause of action accrues when the professional relationship or the course of treatment is terminated, and a plaintiff "is not entitled to a new limitations period to begin with the appearance of each new injury or complication." *Id.*  Similarly, Holladay argues this Court should reject the Court of Appeals' holding that Snake Steel would essentially remain entitled to at least 365 days of statutory penalties, regardless of how long it waited to assert its claim.

We have carefully considered Holladay's arguments and must respectfully disagree. First, this case does not involve an injury in a tort case.  The continuous tort doctrine is inapposite, by analogy or otherwise, to the assessment of a statutory penalty.  Our analysis must hinge on interpretation of the statute that creates the penalty.

The first rule of statutory construction is to effectuate legislative intent.  *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017).  We look at "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)).  We seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard*, 528 S.W.3d at 496 (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The statute's text "is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

As outlined above, the Prompt Pay Act goes to great lengths to ensure that construction contractors are timely paid.  After setting forth strict deadlines for payments to contractors and subcontractors, the Act makes violation of the deadline provisions a misdemeanor, subject to a fine of $3000, with each day constituting a separate violation. Tenn. Code Ann. § 66-34-103(e)(2).  As further protection for contractors, absent an exception, the Act obliges persons who withhold retainage to deposit it into a separate interest-bearing escrow account. *Id.* § 66-34-104(a).  This ensures the money is set aside and contractors receive interest even if their receipt of the retainage is delayed.  To put teeth into the escrow requirement, for persons required to deposit the retainage into such

- 11 -

an escrow account, failure to do so results in a penalty of $300 per day.[18]  The Act adds emphatically that the $300 per day penalty is "for *each and every day* that such retained funds are not deposited into such escrow account."  *Id.* § 66-34-104(c) (emphasis added).

Looking first to the text of the statute, Tennessee Code Annotated section 66-34-104(c) clearly assesses the penalty "per day," for "each and every day" the retainage is not deposited into an escrow account.  We consider next the statute's subject matter, its objective, the wrong it seeks to prevent, the purpose it seeks to accomplish, *Spires*, 539 S.W.3d at 143, and the statutory framework, *Coffee County Board of Education*, 574 S.W.3d at 846.  Here, the Act's purpose, its objective, is to prevent the very wrong done in this case—for years after Snake Steel completed its work, Holladay received the benefit and use of retainage that rightfully belonged to Snake Steel.  The statutory framework indicates the legislature's resolve to make it not worthwhile for contractors such as Holladay to abuse the lawful mechanism of withholding retainage to ensure completion of work.  Interpreting section 66-34-104(c) to assess the statutory penalty anew each day reflects the natural and ordinary meaning of the statutory language and aligns with the context and purpose of the Prompt Pay Act as a whole.  *See Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 839.

Holladay notes that, in this case, neither party knew the law required retainage to be placed in an escrow account.  It characterizes the $300 per day penalty as "draconian."  Holladay argues the holding of the Court of Appeals on this issue, allowing Snake Steel to recover at least $109,500 in penalties no matter how long it waits to file suit, would represent a "huge windfall" to Snake Steel since the entire retainage was only $18,270.58.

Perhaps.  Those policy decisions, however, are within the purview of the legislature.  Our job is to apply the statutes as they are written.

We agree with the Court of Appeals that, provided Snake Steel can establish that Holladay was required to deposit the subcontractor retainage funds into an escrow account, the statute of limitations does not preclude Snake Steel from recovering the $300 per day penalty commencing 365 days before the filing of the complaint and for each day following

---

[18] The 2020 amendments to the Prompt Pay Act changed that section to specify that the $300 per day is damages, not a penalty.  *See* Act of June 22, 2020 § 17.  That amendment is not applicable to this case.

- 12 -

the filing of the complaint, up to the day Holladay tendered the retainage to Snake Steel.[19] *Snake Steel, Inc.*, 2020 WL 365304, at \*9.

### CONCLUSION

In conclusion, we reverse the Court of Appeals' application of the discovery rule to toll the one-year statute of limitations as to Snake Steel's penalty claim. We reverse as well the Court of Appeals' direction to the trial court to determine on remand the issue of when Snake Steel knew or should have known its retainage had not been deposited into an escrow account. We affirm the Court of Appeals' holding that, provided Snake Steel can establish that Holladay was required to deposit the subcontractor retainage funds into an escrow account, the statute of limitations does not preclude Snake Steel from recovering the $300 per day penalty, commencing 365 days before Snake Steel filed its complaint in this cause, up to the day Holladay tendered the retainage to Snake Steel. We affirm the trial court's grant of summary judgment in favor of Holladay as to Snake Steel's claim for the statutory penalty prior to September 25, 2016, i.e., 365 days before the complaint was filed. We reverse the trial court's grant of summary judgment in favor of Holladay as to Snake Steel's claim for the statutory penalty commencing 365 days before the filing of the complaint.

---

[19] Holladay initially tendered the retainage to Snake Steel in October 2017, and Snake Steel refused to accept it. Holladay again tendered it in December 2017, and this time Snake Steel accepted it. As with the Court of Appeals, we have not been asked to determine which tender date is operative, so we leave that question for the trial court on remand. *Snake Steel, Inc.*, 2020 WL 365304, at \*9 n.5.

- 13 -

The cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed one-half to Plaintiff-Appellee Snake Steel, Inc., and one-half to Defendant-Appellant Holladay Construction Group, LLC, and its surety, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE